Scileppi, J.
On February 12, 1964 plaintiff Bobert Boark, then 19 years old, fell on an icy patch on the sidewalk abutting a store and building owned by the defendants Edward and Peter Hunting and occupied by codefendant Frederick Grober (not a party to this appeal) as tenant. The fall resulted in the fracture of Bobert’s left ankle. Thereafter Bobert and his mother, Winifred, instituted separate actions against the Huntings and Grober.
The complaint in the action against the Huntings alleged that the ice on the sidewalk was caused by water flowing from the gutter, leads and pipes and from a .sign extending' across *473 the sidewalk connected to the building owned by the defendants. The complaint further alleged that the sidewalk in front of the building was broken and in a state of disrepair and acted as a catchall for the water which flowed from the building and sign. The complaint in the action against Grober was virtually identical to the instant one, except that it alleged that Grober controlled the sign.
The plaintiff’s case, aside from the usual medical evidence, consisted of the testimony of the tenant Grober, Robert Roark and Mary Louise Roark, Robert’s sister.
Grober testified that he had originally leased the premises from a Mrs. Zell and erected the sign when he became a tenant. Later, when the Huntings bought the building, he remained as a tenant and paid rent in accordance with the terms of the lease that he had with Mrs. Zell. He further testified that he personally took care of the sidewalk in front of the store, clearing it of dirt, snow and ice. He did not clean off the sidewalk on the day of the accident — a holiday — because his store was closed and could not remember if he had cleaned the sidewalk the previous day.
Robert Roark testified that the accident took place at around 4:45 p.m. He and his sister were returning home from a movie. She was walking on his right closer to the building line. The street was mostly clear although there were some spots of ice and snow. Suddenly, in front of the defendants’ premises he slipped on an ice patch. As he was lying on the ground he noticed the sign above him and several icicles dripping from it. There was no ice near the building where his sister had been walking and there was no ice near the curb.
Mary Louise Roark testified that she was walking along with her brother and saw an ice patch on the sidewalk in front of him. Before she could warn him, he slipped and fell to the ground. The ice patch was located in front of the defendants’ premises directly beneath the sign. Although she did not notice whether icicles were dripping from the sign because she was concerned with her brother, she did state that on prior occasions she noticed icicles dripping from both the sign and the building. She also testified that on occasions prior to the accident she had observed that the sidewalk in front of the defendants’ property *474 was broken up. Photographs introduced into evidence and reproduced in the respondents’ brief show many large cracks in the sidewalk.
The main witness for the defendants was Peter Hunting. He stated that he learned of the accident several hours after it occurred. He went to the area of the (Prober store and inspected the building and sidewalk and did not find any ice on the street. Mr. Hunting said that he had made some minor repairs to some parts of the sidewalk abutting his building, but there is no evidence that these repairs (filling cracks in with blacktop) were done in the area directly beneath the sign or that they were done negligently. Mr. Hunting also said that as landlord he was responsible for the exterior of the building.
On cross-examination Mr. Hunting stated that he had reported the accident to his insurance agent. He further stated that he observed the sign hanging in front of (Prober’s store and had never seen ice on it or dripping from it.
At the conclusion of the. trial, the jury returned a verdict against the Huntings in favor of Robert Roark in the sum of $19,000 and a verdict in the derivative action in favor of his mother Winifred Roark in the sum of $4,000. A verdict of no cause of action was found in favor of the defendant (Prober.
On appeal the Appellate Division held that, although there was a conflict between statements made by Robert Roark and his sister shortly after the accident and their trial testimony, the jury apparently elected to accept their trial testimony and other evidence that established negligence on the part of the Huntings; that objections to remarks of counsel for the tenant in his summation and to the charge, including requests to charge insofar as exceptions were taken, were not sustainable as errors requiring reversal; that the $4,000 verdict in favor of Winifred Roark was excessive and should be reduced to $1,500. The judgment in favor of the tenant (Prober was affirmed.*
The only substantial question raised on this appeal is whether, under the established facts of this case and in light of well-settled principles of law, the defendants are legally liable for plaintiff’s injuries.
*475 The basic rules in snow and ice cases were reviewed by the Appellate Division in Cannon v. Pfleider (19 A D 2d 625, 626): “As a general rule it is only the’ municipality which may be held liable for the negligent failure to remove snow and ice from a public sidewalk or to have defects and dangerous conditions in the sidewalk repaired (Tremblay v. Harmony Mills, 171 N. Y. 598), unless a charter, statute or a.n ordinance clearly imposes liability upon the owner in favor of the injured pedestrian (City of Rochester v. Campbell, 123 N. Y. 405; Tremblay v. Harmony Mills, supra). The parties cite no provision of any charter, statute or ordinance imposing such liability on an abutting owner. An abutting owner is not liable even though he fails to comply with a provision of a charter, statute or ordinance charging him with removal of snow and ice, nor is he liable for the removal thereof in an incomplete manner (Kelly v. Rose, 291 N. Y. 611; Lee v. Ortiz, 249 N. Y. 613; Glassman v. City of New York, 284 App. Div. 1045, affd. 1 N Y 2d 712). It is also a general rule that an abutting owner is liable if, by artificial means, snow and ice are transferred from the abutting premises to the sidewalk; or if, by such artificial means, water from the property is permitted to flow onto the public sidewalk where it freezes. The basic distinction between liability and nonliability rests upon whether the water, snow or ice was conducted from private premises to the public sidewalk by artificial or natural means. The abutting owner may be held liable in the former case — where the unsafe condition was created by his own wrongful act (34 A. L. R. 410; Tremblay v. Harmony Mills, supra; Selig v. Mastoloni, 283 App. Div. 741). He is not liable in the latter case-—-where he committed no wrongful act (Moore v. Gadsden, 87 N. Y. 84).”
In the instant case there is not one iota of evidence that water flowed from the building or any instrumentality owned or controlled by the defendants. The evidence clearly shows that the water dripped from the sign and that this sign was erected by the tenant before the Hunting brothers bought the building. There is no evidence that the Huntings controlled or maintained the sign, although it was attached to a pipe and bracket which were part of the exterior of the building. Peter Hunting did testify that he was responsible for the exterior of the building, but the evidence fails to indicate that the water was conducted *476 to the sidewalk because the sign was either negligently erected or maintained by the tenant, or because of a defect in the pipe and bracket which were affixed to the building owned by the defendants herein. The only evidence bearing on maintenance of the sign is the lease under which Grober occupied the premises.
In clause 11th the tenant is given the right to erect a sign with the consent of the landlord. The clause goes on to provide: “ And in case the Landlord or the Landlord’s representatives shall deem it necessary to remove any such sign or signs in order to paint the said premises or the building wherein same is situated or make any other repairs, alterations or improvements in or upon said premises or building or any part thereof, the Landlord shall have the right to do so, providing the same be removed and replaced at the Landlord’s expense, whenever the said repairs, alterations or improvements shall be completed.”
It can readily be seen that the defendants’ only right with respect to the tenant’s sign was the right to remove it to make repairs to the exterior or interior of the building. For all other purposes it would appear that the tenant was responsible for the sign.
In Zolessi v. Bruce-Brown (243 N. Y. 490) a sign erected on the exterior of the building fell and injured the plaintiff. In holding that the landlord was not liable, this court said (p. 497): “ The duty to keep a building or part of it in repair is coextensive with the control retained by the landlord. (Jennings v. Van Schaick, 108 N. Y. 530.) Here the landlord leased separate lofts on floors in the building, retaining some control of the outer walls for the purpose of making repairs; but the sign in question fell, not because the wall was not kept in repair, but because the sign itself was negligently erected or maintained. The tenant, as we have pointed out, alone erected and alone .maintained the sign, and the landlord was guilty of no breach of duty to the public in giving the tenant exclusive control of the sign. We have found no case where the duty to repair the walls of a building of which the landlord maintains control includes the duty to inspect the manner in which a sign in the exclusive control of the tenant is attached to the wall. In all cases where the landlord has been held liable for the *477 result of negligent acts of the tenant, the landlord actually participated in some way in such negligence or by his own negligence contributed to the result. Since the plaintiff’s . injuries were not in any way caused by any defective condition of the wall itself, or by any act of the owner, or by any agency controlled, directed or set in motion by her, it seems impossible to predicate liability on her part for such injuries merely upon the fact that as the owner she was under a duty to maintain the wall itself in proper condition. ’ ’
Clearly the rule of the Zolessi case is controlling and, therefore, the defendants should not be liable merely because water flowed from the sign. It may be, however, that the jury found that the dripping from the sign would not have caused the condition which resulted in the fall if the sidewalk beneath the sign had not been broken and in a state of disrepair, and based their verdict against the defendants on that theory.' Indeed the defective sidewalk is the only factor which would explain these seemingly inconsistent verdicts. We are of the opinion, however, that the defendants’ liability cannot be predicated on the fact that the sidewalk was in a state of disrepair. The responsibility for maintaining the sidewalk rested upon the municipality and not upon the defendants (landlord). It is true Peter Hunting stated that he undertook to fill in some of the worst cracks in the street with blacktop, but there is no evidence that he made repairs in the area directly beneath the sign or that the repairs which he made were made negligently and caused the water to collect and freeze. In our view, an owner should not be held generally responsible for the condition of the sidewalk abutting his premises merely because he undertook to make some minor repairs in certain parts of the sidewalk which were not related to the place of the accident. Here the defendants owned a corner building. It would be most unfair—indeed harsh-—-to cast them in liability for an accident occurring on the front street of their property if they merely repaired -several cracks in the street around the corner on the side of the building or on the same street but unrelated to where plaintiff fell. While a volunteer may be liable for negligently performing the task that he has undertaken, there is in this case no evidence of negligence and no evidence that the repairs made caused the accident.
*478 ’ Accordingly, the order appealed from should he reversed and the complaint dismissed.
Chief Judge Fold and Judges Bergan, Breitel and Jasen concur with Judge Scileppi ; Judges Burke and Keating dissent and vote to affirm on the opinion at the Appellate Division.
Order reversed, with costs, and case remitted to Supreme Court, Albany County, for further proceedings in accordance with the opinion herein.

 Plaintiff’s motion for leave to appeal from the unanimous affirmance as to the tenant was denied (Roark v. Grober 21 N Y 2d 643).