Sara **ZUCKER**, Individually and as Administratrix of the Goods, Chattels and Credits which were of Hilla Zucker, Deceased, Plaintiff,

v.

Andrew **CAPITELLI**, an Infant over the Age of 14 Years, Individually and By his Parent or Natural Guardian, Buchanan Construction Corp., Scotty Construction Corp. and the City of New York, Defendants.

No. CV 89–0463 (ADS).

United States District Court,
E.D. New York.

May 14, 1990.

450

Moser & Henkin, New York City, for plaintiff; Norman E. Henkin, of counsel.

Waxman & Miller, P.C., Great Neck, N.Y., for defendant Buchanan Const. Corp.; Jeffrey Boyar, of counsel.

Victor Kovner, Corp. Counsel, City of New York, New York City, for defendant City of New York; Steven Levi, of counsel.

Ferrari, Rosenthal & Matusiak, Manhasset, N.Y., for defendant Scotty Const. Corp.; James Matusiak, of counsel.

## MEMORANDUM DECISION AND ORDER

SPATT, District Judge.

In this wrongful death action the defendants Buchanan Construction Corporation ("Buchanan") and Scotty Construction Corporation ("Scotty") move for summary judgment pursuant to Fed.R.Civ.P. 56, on the ground that there are no genuine issues of material fact in dispute. The defendant, the City of New York ("City"), also moves for summary judgment claiming that as a matter of law section 7–201(c) of the Administrative Code of the City of New York ("City Code") bars recovery, since the City had not received prior written notice of the alleged defective, unsafe or obstructive condition. For the reasons stated below, the motions of Buchanan and Scotty are denied in all respects, and the City's motion is granted in part and denied in part.

## FACTUAL BACKGROUND

On December 2, 1988 at 3:25 a.m., Hilla Zucker was driving a vehicle owned by Shimshon Zucker in a westerly direction on 39th Avenue approaching the intersection of 211th Street in Bayside, Queens. Defendant Andrew Capitelli ("Capitelli"), a 16–year old without a driver's license, was operating a stolen automobile heading northbound on 211th Street toward 39th Avenue while fleeing from the police. After admittedly running the stop sign on 211th, the vehicle operated by Capitelli collided with the Zucker vehicle at the intersection. The plaintiff alleges that Zucker was unable to see Capitelli, since an 8–foot high solid wood construction fence bounding property on the southeast corner of the intersection allegedly obstructed her view as she was travelling westbound on 39th Avenue. Hilla Zucker died as a result of the injuries sustained from the collision.

The plaintiff, as administratrix of the estate of Hilla Zucker, filed a complaint on February 9, 1989, followed by an amended complaint on February 14, 1989, naming Capitelli, Buchanan, Scotty and the City as defendants.

As to Buchanan, Scotty and the City, the plaintiff's causes of action are based upon the erection and maintenance of the construction fence which purportedly obstructed Zucker's view of 211th Street, just south of 39th Avenue. The 8–foot high solid wood fence extended 108 feet along the southern sidewalk of 39th Avenue and 60 feet along the eastern sidewalk of 211th Street. The fence enclosed a construction site owned by Buchanan at the time of the accident, and was erected to protect the public from injury during demolition. It is also alleged that the fence slightly encroached upon both sidewalks.

Scotty is the former owner of the construction site and erected the fence. Two weeks prior to the accident it conveyed the premises to Buchanan. The plaintiff alleges that Scotty was negligent in erecting and/or maintaining the fence, and Buchanan was negligent in maintaining the fence after the premises were purchased from Scotty.

The plaintiff further alleges that the City was negligent in failing to adequately protect its streets and highways and persons lawfully using them in that the fence encroached upon the sidewalk and obstructed visibility for persons travelling westbound on 39th Avenue. The plaintiff also contends that the City failed to post a sign or light at the intersection, warning motorists of the obstructed view and possible danger.

## PROCEDURAL SETTING

On April 28, 1989, Scotty made a motion to dismiss the complaint under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted. By order dated May 5, 1989, the Honorable Reena Raggi denied the motion without prejudice to renew at an appropriate time. The defendants, with the exception of Capitelli, appeared, answered and filed cross-claims seeking contribution and/or indemnification. Plaintiff sought, and was subsequently granted, leave to amend the exist-

ing amended complaint. Buchanan, Scotty and the City now move for summary judgment.

## DISCUSSION

### a) *Standard of Review.*

Pursuant to Fed.R.Civ.P. 56(c), summary judgment shall be rendered if the supporting evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law (*see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 [1986]; *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 [2d Cir.1986], *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 [1987]). A genuine issue is "material" if the fact in dispute is one which might affect the outcome of the litigation and there is sufficient evidence on both sides of the issue to infer that it could reasonably be resolved in favor of either party (*see Scan–Plast Indus., Inc. v. Scanimport Am. Inc.,* 652 F.Supp. 1156, 1160 [E.D.N.Y.1987], citing *Anderson, supra*). Nonetheless, summary judgment is a drastic remedy which should be used sparingly and cautiously so as to ensure the non-movant's right to have material, genuine claims or defenses tried by a jury. Although summary judgment is desirable to avoid unnecessary trials, it should not be viewed "as a substitute for trial" (*see Apex Oil Co. v. DiMauro,* 822 F.2d 246, 252 [2d Cir.1987]).

On a motion for summary judgment, the Court is required to view the evidence submitted by the parties in the light most favorable to the non-movant plaintiff (*see Burtnieks v. The City of New York,* 716 F.2d 982, 985 [2d Cir.1983]). Accordingly, the Court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant (*see Anderson,* 477 U.S. at p. 255, 106 S.Ct. at 2513). In addition, the Court notes that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge" (*Anderson, supra,* 477 U.S. at p. 255, 106 S.Ct. at p. 2513).

With these basic principles in mind, the Court now turns to the merits of the issues brought before the Court by way of these three motions for summary judgment.

### b) *As to Buchanan.*

It is undisputed that Buchanan acquired title and possession to the construction site (*i.e.,* the premises at the southeast corner of the intersection of the collision), fourteen days prior to the date of the accident. Buchanan claims that since the fence was not physically changed or altered from the time it took ownership until the accident, it should not be held responsible for any negligence on the part of the defendant, Scotty. Buchanan also claims that the plaintiff has not offered any evidence to indicate that the fence was in anyway in violation of the City Code or that Buchanan was negligent in maintaining it. In any event, Buchanan contends that as a matter of law a subsequent owner is not responsible for a defective condition on the premises until there has been actual or constructive notice of the alleged dangerous condition, and a reasonable time to repair or remedy it. Finally, Buchanan asserts that the fence in question was in no way a proximate cause of the alleged occurrence, but rather that Capitelli's actions were an intervening superseding cause.

At the outset, the Court notes that it is well settled that a landowner in New York has "a duty to exercise reasonable care under the circumstances in maintaining its property in a safe condition" (*see Kush v. City of Buffalo,* 59 N.Y.2d 26, 29, 449 N.E.2d 725, 727, 462 N.Y.S.2d 831, 833 [1983]). At common law, "a vendee could be held liable for injuries sustained as the result of a dangerous condition of the premises, even though such condition preexisted the time of the conveyance" (*Farragher v. The City of New York,* 26 A.D.2d 494, 496, 275 N.Y.S.2d 542, 544 [1st Dep't 1966], *aff'd on opinion below,* 21 N.Y.2d 756, 235 N.E.2d 218, 288 N.Y.S.2d 232 [1968]). An exception to this doctrine, which has been strictly construed, is "[w]here there is an undisclosed condition, and the vendee has no knowledge of this condition, or where the vendor actively conceals it, the liability remains with the ven-

dor until the vendee has had a reasonable time to discover and remedy it" (*Farragher, supra*). This exception also applies where the vendee has knowledge of the alleged dangerous condition at the time of the conveyance, as in the instant case, but sufficient time has not elapsed to allow the vendee to remedy the defect (*Farragher, supra*). In *Farragher,* an action was brought against the City of New York, as well as the vendor and vendee of a building where a City fireman died when responding to a fire where the building was not equipped with a sprinkler system as required by law. A violation had been placed against the building about one and one-half years before the fire and the vendee took title subject to notice of the violation contained in the contract of sale. The court held that the vendor was not insulated from liability by reason of the transfer.

■ Applying the rules derived from *Farragher,* even if Buchanan had knowledge of the alleged dangerous condition, it is a question of fact for the jury to determine whether Buchanan had sufficient time to remedy or repair the dangerous condition after purchasing the property from Scotty. Although Scotty claims that Buchanan had more than a reasonable amount of time to repair the allegedly defective fence (*see* Matusiak Affirmation at p. 11), the issue of constructive notice to Buchanan is for the jury.

■ Buchanan's claim that compliance with the City Code precludes a finding of negligence, is also without merit. It is well established that while a defendant's compliance with a statute is *some* evidence of due care, it does not necessarily follow that there is no negligence as a matter of law based upon such compliance (*see Stone v. Sterling Drug, Inc.,* 111 A.D.2d 1017, 1019, 490 N.Y.S.2d 468, 470 [3d Dep't 1985], citing *Sherman v. Lowenstein & Sons,* 28 A.D.2d 922, 282 N.Y.S.2d 142 [2d Dep't 1967]). Therefore, Buchanan's argument that it is entitled to summary judgment on the ground that plaintiff failed to establish any statutory violations must fail.

■ As to Buchanan's argument that the existence of the fence was not a proximate cause of the accident and that in any event the acts of the defendant Capitelli were the superseding cause, the Court notes that it is axiomatic that there may be more than one proximate cause of an accident (*see Vinogradov v. Clicquot Club Co.,* 55 A.D.2d 489, 491, 391 N.Y.S.2d 18, 19 [3d Dep't 1977]). After reviewing the evidence presented, the Court finds that the issue of proximate cause here is a question of fact for the jury. Intervening acts of third persons do not necessarily bar recovery if they are reasonably foreseeable. It is a question of fact for the jury to determine whether the intervening act was extraordinary under the circumstances, not foreseeable in the normal course of events, or independent of or so far removed from the defendant's conduct that it would constitute a superseding act and break the "causal nexus" (*see, e.g., Derdiarian v. Felix Contracting Corp.,* 51 N.Y.2d 308, 315–16, 414 N.E.2d 666, 670, 434 N.Y.S.2d 166, 169–70 [1980] [Cooke, Ch. J.]; *see also Cherny v. Hurlburt,* 150 A.D.2d 942, 943, 541 N.Y.S.2d 283, 284 [3d Dep't 1989] [motion for summary judgment denied on issue of whether intervening act was superseding cause]). As the Court of Appeals stated in *Derdiarian* after finding that the intervening cause issue raised questions of fact, "[b]ecause questions concerning what is foreseeable and what is normal may be the subject of varying inferences, as is the question of negligence itself, these issues generally are for the fact finder to resolve" (*Derdiarian, supra*).

Therefore, Buchanan's motion for summary judgment dismissing the complaint against it is denied.

c) *As to Scotty.*

The plaintiff alleges that Scotty is liable by reason of its negligence in carelessly and recklessly erecting and/or maintaining the solid wood fence on the property at the corner of 39th Avenue and 211th Street. Scotty claims, like Buchanan, that the fence, which it erected prior to the sale of the premises to Buchanan, was in all respects in full compliance with the City Code. Further, it maintains that such com-

454

pliance with a statute designed to protect a certain class of persons (*i.e.*, from injury at the construction site), should not be the basis for a finding of liability for the unforeseeable death of a person outside that designated class. Since Scotty neither occupied, owned, controlled nor made special use of the premises at the time of the accident, it further contends that it should not be held responsible after it transferred title to another, namely Buchanan. Additionally, Scotty asserts that even if the placement or erection of the construction fence was negligent, the intervening acts of the defendant Capitelli were of such a nature as to be a superseding and proximate cause of the plaintiff's injuries and resultant death.

As discussed above with respect to Buchanan, compliance with the City Code does not bar a finding of negligence. Thus, Scotty's contention that it complied with the Code and therefore should be exonerated from liability as a matter of law is rejected for the reasons set forth above.

■ Control is the test which generally measures the responsibility in tort of the owner of real property for defects relating to such property (*see Govel v. Lio*, 120 A.D.2d 840, 841, 502 N.Y.S.2d 290, 291 [3d Dep't 1986], citing *Roark v. Hunting*, 24 N.Y.2d 470, 248 N.E.2d 896, 301 N.Y.S.2d 59 [1969]). Although as a general rule liability remains with the person who created the danger or who was responsible for its continuance (*see Kilmer v. White*, 254 N.Y. 64, 71, 171 N.E. 908, 910 [1930] [Pound, J.]), "[t]he duty to maintain the property falls on the successor-in-title in possession" (*Govel*, 120 A.D.2d at p. 291, 502 N.Y.S.2d at p. 291). In *Govel*, the Appellate Division reversed Special Term's denial of summary judgment on the issue of control as between the vendor and vendee, where the "condition of the driveway was a *perfectly obvious* one" (*Govel, supra* [emphasis supplied]).

■ In the instant case, although title and control were surrendered by Scotty two weeks prior to the accident, it nonetheless may be found liable if the trier of facts determines that sufficient time had

not yet elapsed from the time title passed until the time of the accident, which would have allowed the vendee, in this case Buchanan, sufficient time to discover and remedy or repair any alleged defects (*see Farragher*, 26 A.D.2d at p. 496, 275 N.Y.S.2d at p. 544). Thus, as with Buchanan, the Court finds that there are genuine issues of material fact to be tried including whether or not Buchanan had sufficient time to discover any allegedly defective condition of the fence and to take the necessary steps to remedy it.

As to Scotty's argument that the allegedly defective fence was not a proximate cause of the accident and the acts of the defendant Capitelli were the superseding cause, as discussed above with respect to Buchanan, the Court finds that there are questions of fact for the jury (*see, e.g., Derdiarian*, 51 N.Y.2d at p. 315, 414 N.E.2d at p. 670, 434 N.Y.S.2d at p. 169; *Cherny*, 150 A.D.2d at p. 943, 541 N.Y.S.2d at p. 284).

Therefore, Scotty's motion for summary judgment dismissing the complaint against it is also denied.

### d) *As to the City.*

As mentioned at the outset, the plaintiff alleges basically two theories of negligence against the City: (1) the City's failure to protect it's streets and highways and persons lawfully using them by allowing the fence to remain as an obstructed condition for motorists; and, (2) failure to post warning signs or lights at the intersection (*see* Amended Complaint ¶ 29). The City's present motion for summary judgment is based solely on the grounds that it had not received prior written notice under the "pothole law" (*see* City Code § 7–201). Although both theories sound in negligence, they are each subject to a distinct analysis for purposes of determining whether the prior written notice requirement of the City Code has been satisfied.

### i. Obstructed Condition.

The City contends that the plaintiff cannot maintain this action because there was

no prior written notice to the Commissioner of Transportation of the alleged dangerous condition in accordance with section 7–201(c) of the City Code. It is not disputed that prior written notice was never received by the City as to the alleged obstructive condition of the construction fence. The City argues that such notice is a "condition precedent" to the maintenance of a personal injury action, and that the plaintiff has failed to come forward with any evidence of prior written notice to even raise a triable issue that would defeat summary judgment.

Section 7–201 of the City Code provides in relevant part:

"c. 2. No civil action shall be maintained against the city for damage to property or injury to person or death sustained in consequence of any street, highway, bridge, wharf, culvert, sidewalk or crosswalk, or any part or portion of any of the foregoing *including any incumbrances thereon or attachments thereto, being out of repair, unsafe, dangerous or obstructed, unless it appears that written notice of the defective, unsafe, dangerous or obstructed condition,* was actually given to the commissioner of transportation or any person or department authorized by the commissioner to receive such notice, or where there was previous injury to person or property as a result of the existence of the *defective, unsafe, dangerous, or obstructed condition,* and written notice thereof was given to a city agency, or there was written acknowledgement from the city of the *defective, unsafe, dangerous or obstructed condition,* and there was a failure or neglect within fifteen days after the receipt of such notice to repair or remove the defect, danger or obstruction complained of, or the place otherwise made reasonably safe." (emphasis supplied.)

City Code § 7–201(c).

■ It is well established that an action may not be maintained against the City to recover damages for personal injuries occurring as the result of a dangerous condition on any sidewalk or highway unless prior written notice has been provided (*see Laing v. City of New York,* 71 N.Y.2d 912, 914, 523 N.E.2d 816, 817, 528 N.Y.S.2d 530, 531 [1988] ). Since "prior notice" statutes are in derogation of the common law, they are to be strictly construed (*see Monteleone v. Village of Floral Park,* 74 N.Y.2d 917, 918, 549 N.E.2d 459, 460, 550 N.Y.S.2d 257, 258 [1989] ).

At the outset, there is no evidence of affirmative acts on the part of the City. No one contends that the City "caused or created" the wooden fence.

■ The plaintiff's allegations that the City was negligent in allowing the fence to remain as an "obstructed condition" encroaching upon the sidewalk, places that cause of action squarely within the plain language of section 7–201 of the City Code for purposes of prior written notice. It is precisely for this type of situation that the pothole law was enacted. Therefore, since it is undisputed that the City never received prior written notice of the obstructed condition, the plaintiff is precluded as a matter of law from maintaining this action on that theory of negligence. Accordingly, the City's motion for summary judgment is granted as to that portion of plaintiff's cause of action that alleges the City's negligence for an "obstructed condition" on the sidewalk.

As to the plaintiff's reliance on *Aetna Life & Casualty v. City of New York,* 116 Misc.2d 838, 840, 456 N.Y.S.2d 647, 649 (N.Y.C.Civ.Ct. Queens County 1982), for the proposition that the City's constructive or actual notice of a "construction area" dispenses with the requirements of the pothole law, this Court finds the apparent rationale in the *Aetna* decision to be unpersuasive. The court in *Aetna* relied on *Martin v. City of Cohoes,* 37 N.Y.2d 162, 166, 332 N.E.2d 867, 870, 371 N.Y.S.2d 687, 691 (1975), which specifically held that "where a statute applicable to a case requires prior written notice, proof of *affirmative tortious conduct* on the part of a municipality will suffice" (emphasis supplied). Since there is no evidence of any affirmative tortious conduct on the part of the City, and the Court does not believe that con-

structive notice of a defect in the "construction area" of a third party would obviate compliance with the pothole law, the Court declines to apply *Aetna* to the circumstances of this case.

### ii. Failure to Erect or Maintain A Sign or Signal.

In addition to claiming that the fence constituted an obstructed condition, the plaintiff alleges that the City was negligent in failing to post a traffic signal or sign at the intersection, warning of the obstruction (*see* Amended Complaint ¶ 29). With respect to the prior notice requirement of the City Code, this theory advanced by the plaintiff differs significantly from alleging that the fence constituted an obstruction (*see supra*).

Under New York law, it is well settled that the failure to erect or maintain traffic signs is not within the coverage of the prior notice statutes (*see Alexander v. Eldred*, 63 N.Y.2d 460, 467, 472 N.E.2d 996, 999, 483 N.Y.S.2d 168, 171 [1984]; *see also Doremus v. Incorporated City of Lynbrook*, 18 N.Y.2d 362, 365, 222 N.E.2d 376, 377, 275 N.Y.S.2d 505, 507 [1966]). In this Court's view, the holding of *Alexander* clearly applies here: namely, prior written notice to the City of the failure to post or maintain a sign warning of the alleged obstructed condition is not required under the City Code. Therefore, as to plaintiff's theory of negligence against the City based upon the failure to post a sign or erect or maintain a traffic signal, the City's motion is denied, since the Court finds that *no* written notice is required under settled principles of New York law. Of course, the Court does not rule on the merits of such a claim, since that issue was not presented under the posture of the City's motion.

### e) *As to Sanctions.*

The plaintiff requests the Court to impose Rule 11 sanctions upon the defendant Buchanan for the filing of this motion.

Rule 11 was enacted to "discourag[e] dilatory and abusive litigation tactics and eliminat[e] frivolous claims and defenses, thereby speeding up and reducing the costs of the litigation process" (*McMahon v. Shearson/American Express, Inc.,* 896 F.2d 17, 21 [2d Cir.1990]; *see also* Fed.R. Civ.P. 11 advisory committee's note, *reprinted in* 97 F.R.D. 165, 198 [1983] ["should ... help to streamline the litigation process by lessening frivolous claims or defenses"]). Sanctions should be sparingly imposed, however, and care should be taken to avoid chilling creativity or stifling enthusiasm (*see Security Indus. Ass'n v. Clarke,* 898 F.2d 318 [2d Cir.1990]).

Applying the "objectively reasonable" test to defendant Buchanan's motion and other papers as this Court must (*see Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 253 [2d Cir.1985]), the Court finds that Buchanan did not violate Rule 11, and therefore declines to impose sanctions upon this defendant or its counsel.

Accordingly, the request by the plaintiff for sanctions against Buchanan is denied.

### CONCLUSION

For the foregoing reasons, the motions by the defendants Buchanan and Scotty for summary judgment dismissing all of the causes of action in plaintiff's amended complaint are denied, as is the plaintiff's request for sanctions against defendant Buchanan. The City's motion for summary judgment is granted in part and denied in part as set forth above.

All parties are directed to appear in Chambers for a status conference at 8:30 a.m. on June 7, 1990.

SO ORDERED.