OPINION OF THE COURT
Chief Judge Cooke.
One who is injured in a traffic accident can recover against a municipality if it is shown that its failure to *464 install a traffic control or warning device was negligent under the circumstances, that this omission was a contributing cause of the mishap, and that there was no reasonable basis for the municipality’s inaction. As plaintiff here has satisfied his burden of establishing these factors, he is entitled to damages against defendant City of Ithaca.
On this appeal challenging the sufficiency of the evidence to support a verdict for plaintiff, as often recited, the testimony presented to the jury is viewed in the light most favorable to plaintiff (see Cohen v Hallmark Cards, 45 NY2d 493, 499; Flamer v City of Yonkers, 309 NY 114, 117). This court, therefore, is generally unconcerned with conflicting evidence unless it renders plaintiff’s evidence incredible as a matter of law so as to remove any rational basis for the verdict (see Blum v Fresh Grown Preserve Corp., 292 NY 241).
Plaintiff was injured while riding his motorcycle on the evening of July 20,1978, in the City of Ithaca when struck by a cab owned by defendant Terminal Taxi, Inc., and driven by defendant Frank D. Eldred. The accident occurred at the intersection of Stewart Avenue, a winding road, and Edgecliff Place, a private road with an extremely steep incline to Stewart Avenue. These conditions resulted in a limited line of sight for cars leaving Edgecliff Place, which was exacerbated by dense foliage on the roadside. There was no stop sign or other traffic control on Edgecliff Place, although there was a stop sign on Thurston Avenue, a City road almost directly opposite Edgecliff Place.
Plaintiff did not see the taxi until just before the collision. He testified that he saw the cab when it was about 10 to 15 feet down Edgecliff Place and moving toward Stewart Avenue at around 15 to 20 miles per hour.' Plaintiff asserted that, without ever stopping, the taxi entered Stewart Avenue and struck plaintiff, throwing him some 30 feet to the other side of the road. Plaintiff suffered serious injuries to his right foot.
At trial, plaintiff presented an expert on highway safety who stated unequivocally that there should have been a stop sign on Edgecliff Place. He also testified that a “stop line” or “stop bar” — a white line painted on the pavement to indicate where a vehicle should stop — would have been *465 helpful, but only in a limited fashion as the severity of the upgrade would have prevented a driver from being able to see it from very far down the hill.
The Traffic Engineer for the City of Ithaca testified that he was responsible for deciding whether traffic controls should be installed by the municipality. He admitted that traffic counts were completed at the intersection of Stewart and Thurston Avenues in 1960 and 1976, but he never saw the latter study until after the 1978 accident. The engineer also declared that he never considered putting a stop sign on Edgecliff Place because he believed that, as a private road, it was outside the City’s jurisdiction.
The jury returned a verdict for plaintiff, finding him free of any contributory negligence. It found the City of Ithaca to be 30% liable and Terminal Taxi and Eldred to be 70% liable. The jury award of $85,000 was set aside, however, and the trial judge ordered a new hearing limited to the issue of damages unless plaintiff consented to a reduced judgment for $55,000, which he did not do.
All the parties appealed to the Appellate Division. That court unanimously reinstated the jury’s award of $85,000 for damages. Three justices also upheld the verdict against the City of Ithaca, but two justices would have reversed on this issue for differing reasons.
 The City has appealed to this court, arguing three grounds why the verdict against it should be set aside. It claims that its decision whether to install a stop sign is not justiciable. Next, the City asserts that, by virtue of a local law, it could not be responsible for injuries caused by the absence of a stop sign because no prior written notice of the “defect” was given. Lastly, the City posits that, as a matter of law, the lack of a stop sign was not a proximate cause of the accident. As none of these are persuasive, we now affirm.
The City’s first argument relies on the principle that courts generally will not substitute their judgment for governmental decisions on allocating public resources. In the field of traffic engineering, the modern lead case is Weiss v Fote (7 NY2d 579). That litigation concerned the “clearance time” programmed into traffic lights to allow all *466 cars to travel through an intersection before cross-traffic received a green light to proceed. This court declined to “go behind the ordinary performance of planning functions by officials to whom those functions were entrusted” (id., at p 584). It was recognized then that planning decisions might be the result of conflicting expert decisions that required a choice to be made among one or the other (id., at p 586). “To accept a jury’s verdict as to the reasonableness and safety of a plan of governmental service and prefer it over the judgment of the governmental body which originally considered and passed on the matter would be to obstruct normal governmental operations and to place in inexpert hands what the Legislature has seen fit to entrust to experts” (id., at pp 585-586). Absolute immunity was not granted to municipalities, however. “[Liability for injury arising out of the operation of a duly executed highway safety plan may only be predicated on proof that the plan either was evolved without adequate study or lacked reasonable basis” (id., at p 589).
In the present matter, plaintiff adduced evidence sufficient to establish both inadequate study and an unreasonable basis for the City’s traffic plan at Edgecliff Place and Stewart Avenue. At the time of the accident, the City’s Traffic Engineer had never seen a traffic count for that intersection that was less than 18 years old; he admittedly did not review a more recent study until after the accident. He also conceded that the conditions required one to stop on Edgecliff Place before proceeding onto Stewart Avenue and that the Manual of Uniform Traffic Control Devices of the State of New York required a stop sign to be installed in that situation.
The most critical evidence was the Traffic Engineer’s assertion that nothing was done on Edgecliff Place because he believed the City had no power to install a stop sign on a private road. In other words, the City did not consider the merits of installing a stop sign because it believed that it could not erect a sign in any event. Section 1640 (subd [a], par 1) of the Vehicle and Traffic Law expressly authorizes a city to install stop signs on “private roads open to public motor vehicle traffic”. Indeed, the City concedes its authority over Edgecliff Place pursuant to this statute. The utter *467 lack of any basis in law for the City’s forbearance renders its plan unreasonable in the present circumstances.
In so holding, it must be noted that not every misjudgment as to the status of the law will expose a municipality to liability. The legality of a particular course of action quite often is subject to differing opinions stemming from the unsettled nature of the controlling law. Implementing a recommendation derived from a reasoned analysis cannot be deemed culpable conduct merely because the analysis is later determined to have been erroneous by virtue of a subsequent judicial declaration on the pertinent point of law. A different situation prevails when, as here, the specific legal question is settled, whether by statute, case law, or both. If the municipality proceeds in direct contravention, or ignorance, of all legitimate interpretations of the law, its plan of action is inherently unreasonable.
The City’s second argument relies on its local law (Ithaca City Charter, § 7.10) requiring prior written notice of defects in streets or sidewalks before the City can be held liable for injuries resulting from such conditions. The City contends that plaintiff’s action is barred because he did not prove that notice of the condition — a nonexistent stop sign — at the intersection of Edgecliff Place and Stewart Avenue was ever given to the City so as to trigger its planning process. It is well-settled, however, that such prior-notice laws refer to physical defects such as holes and cracks, not to the failure to maintain or erect traffic signs (see Doremus v Incorporated Vil. of Lynbrook, 18 NY2d 362).
Lastly, the City posits that as a matter of law the absence of a stop sign was not the proximate cause of the accident. Pointing to evidence that Eldred stopped his taxi at the very top of Edgecliff Place before entering Stewart Avenue and that both drivers were familiar with the intersection, the City proposes that the presence of a stop sign would not have altered their conduct in any meaningful way.
This court has previously held that a municipality may be excused from liability when its conduct in maintaining a road could not be the proximate cause of an accident. In Atkinson v County of Oneida (59 NY2d 840), the failure to install additional warning signs and lights was deemed to *468 be irrelevant when both drivers were familiar with the intersection. There, the plaintiff admitted that he had passed through the intersection as many as 10 to 20 times a day over a five-year period. The other driver had lived in the area for 24 years. In Tomassi v Town of Union (46 NY2d 91), the plaintiffs were injured after their speeding car hit another one, whose driver was admittedly not concentrating on the road, and swerved into a ditch maintained by the municipality. This court declined to hold the town liable, holding that the road was “reasonably safe for people who obey the rules of the road” (id., at p 97). And, in Cimino v City of New York (54 AD2d 843, affd on opn below 43 NY2d 966), the failure to install a traffic light was held not to be the proximate cause when both drivers could see that they were approaching an uncontrolled intersection and they had a clear line of sight over a vacant lot.
Although these cases demonstrate that a lack of proximate cause can be found as a matter of law, the different factual background of the present case does not compel the same result. Unlike Cimino and Tomassi, here, neither was there a clear line of vision of the approaching cross-traffic nor was the municipality’s asserted negligence totally independent of the accident. To the extent that the City relies on evidence that Eldred stopped at the point where expert testimony established that a stop sign should have been installed, its plea is misdirected. Whether and where Eldred stopped was the subject of conflicting evidence that would support various inferences. As such, it was properly a question of fact for the jury. It is not within the province of this court to substitute its assessment of the evidence for that of the fact finder: having failed to convince the jury of its cause, the City may not find succor in this forum. There was sufficient evidence to establish that Eldred either did not stop or stopped too far down Edgecliff Place to be able to see traffic on Stewart Avenue and that a properly placed stop sign could have avoided this.
Similarly, the drivers’ familiarity with the intersection was not clear. Plaintiff had lived in the neighborhood for three years. Eldred had been driving a taxi for only a year. From the City’s perspective, at best, the evidence showed that he drove past Edgecliff Place three or four times a *469 night, but that he had been down that road only three or four times previously. At worst, the evidence was seriously conflicting. To contrast, in Atkinson, this court dealt with uncontroverted evidence that the parties had transversed a marked intersection either numerous times or over an extremely lengthy period. In the special circumstances of that case, the drivers’ familiarity superseded any negligence by the municipality in not posting additional warnings. The circumstances of the present case do not warrant such treatment.
In summary, plaintiff presented evidence that would support a determination that: the City had omitted installing a needed stop sign on Edgecliff Place without an adequate study or a reasonable basis; the taxi driver failed to stop at the proper point before entering Stewart Avenue; and that the accident might have been averted had a stop sign been in place. Insofar as there are items of evidence to the contrary, these merely raised questions of fact for resolution by the jury.
Accordingly, the order of the Appellate Division should be affirmed* with costs.