OPINION OF THE COURT
John L. Bell, J.
The present claim arises out of a head-on collision of motor vehicles operated by claimant, James L. Mickle (hereinafter claimant), and Leroy Haverly on Interstate Route 787 southbound leading to the toll plaza at interchange 23 of the New York State Thruway[2] on July 29, 1994, at approximately 1:30 p.m. When the accident occurred Mr. Haverly was traveling the wrong way on Route 787 southbound. The basic facts surrounding the accident are essentially undisputed. The claim was bifurcated and this decision addresses only issues relating to liability.
On the accident date the toll plaza at interchange 23 consisted of seven lanes and six toll booths. Two of the lanes leading to the toll booths were entrance lanes, a third lane was used, depending on the time of day, as an entrance or exit lane, and the remaining four lanes were exit lanes. From left to right the lanes were designated IE, 2E, 3E or 3X, 4X, 5X, 6X and 7X. Lane 3 was utilized on the first shift of toll booth operators, the 11:00 p.m. to 7:00 a.m. shift, as an entrance lane and was designated 3E. On the remaining two shifts lane 3 was used to exit the Thruway and was designated 3X. For purposes of this decision motor vehicles entering the Thruway at interchange 23 will be deemed to have traveled in a southerly direction, and vehicles leaving the Thruway will be deemed to have traveled in a northerly direction.[3]
North and to the extreme left (west) of the exit lanes one-way traffic could enter the toll plaza from New York State *969 Route 9W via a down ramp, at the bottom of which appeared “do not enter” signs. In addition, a “wrong way” sign was located between the right “do not enter” sign and the beginning of the entrance ramp. North and to the extreme right (east) of the exit lanes an up ramp was located for motor vehicle operators who wished to travel in either direction on Route 9W. Route 787, consisting of two southbound lanes adjacent to the down ramp of Route 9W and two northbound lanes adjacent to the up ramp of Route 9W, was available for motorists who wished to enter the Thruway from the north at interchange 23 or exit the Thruway at the interchange and travel north.
A structure called a jersey barrier located a distance of approximately 310 feet from the toll booths separated the northbound and southbound lanes of Route 787. A “keep right” sign and a “no u-turn” sign, both consisting of symbols, were located to the front of the jersey barrier. A large “do not enter” sign was located on a sign bridge above the right exit lane for motor vehicles exiting Route 787 from the north. However, a ground-mounted “do not enter” sign was not located in front of the jersey barrier. Furthermore, a “wrong way” sign(s) was not present to the north on Route 787 southbound beyond the jersey barrier.
On the accident date, Mr. Haverly, a truck driver and Teamster steward before his retirement, was performing errands for the Schodack Landing Volunteer Fire Department. After leaving his last stop in the City of Schenectady, he traveled toward the City of Albany on the Thruway in preparing to return home to Schodack Landing. Although he wanted to exit the Thruway at interchange 24, construction was taking place at the interchange, and he therefore decided to exit the Thruway at interchange 23 which he had used only occasionally in the past.
In preparing to exit the Thruway at interchange 23, Mr. Haverly used the lane then designated as 3X. Since Route 787 southbound is approximately 100 yards directly ahead of lane 3X, a driver who wished to use Route 787 northbound or the 9W entrance ramp had to drive his or her motor vehicle rather sharply to the right after driving past the toll booth for lane 3X. In traveling the distance of approximately 100 yards on the toll plaza after he exited the Thruway, Mr. Haverly failed to move his motor vehicle far enough to pass to the right of the jersey barrier in order to enter upon Route 787 northbound. Instead, he descended the deceleration ramp of Route 787 southbound to the left of the jersey barrier, proceeded northerly *970 on Route 787 southbound several hundred yards and struck claimant’s motor vehicle head on when faced with traffic headed toward him in both southbound lanes. Mr. Haverly, a credible witness, testified that there was substantial traffic in the unmarked exit lanes to his right as he began to exit the Thruway and he believed that the motorists to his right were proceeding to enter Route 9W. He acknowledged that he failed to see the “do not enter” sign mounted on the overhead sign bridge.
A determination of the issue of defendant’s negligence rests on whether defendant, in the exercise of due care, was required to place a ground-mounted “do not enter” sign to the front of the jersey barrier to warn motorists exiting the Thruway that the two lanes to the left of the jersey barrier were Route 787 southbound lanes.
The New York State Thruway Authority, an independent public corporation, is solely liable for its negligence in the performance of its usual functions, including the maintenance and operation of the Thruway (Tompkins v State of New York, 6 AD2d 977, revd on other grounds 7 NY2d 906; Matter of Santana v New York State Thruway Auth., 92 Misc 2d 1; Czirer v New York State Thruway Auth., 22 Misc 2d 678; see, 87 NY Jur 2d, Public Authorities, § 7; 65 NY Jur 2d, Highways, Streets, and Bridges, §§ 560, 566). The Court of Claims has exclusive jurisdiction to hear and determine claims against the Thruway (Public Authorities Law § 361-b).
Initially, apart from considering both expert engineering testimony presented by claimant and the provisions of the Manual for Uniform Traffic Control Devices (17 NYCRR ch V [hereinafter MUTCD]),[4] the court concludes that interchange 23 on July 29, 1994 was unreasonably dangerous to a reasonably prudent driver and determines that defendant was, in fact, negligent in failing to erect in the area of the jersey barrier a mandated red and white “do not enter” sign familiar to motorists. Any motorist who has used the Thruway, highways and expressways in New York State knows the importance of signs after a motorist exits a toll booth. Quite often, as a motorist enters or exits a toll plaza, such as the toll plaza at interchange 23, he or she is faced with merging motor vehicles. Traffic signs, particularly traffic warning signs, are of paramount and critical importance to motorists leaving toll booths at many *971 Thruway toll plazas. While a motorist who had the opportunity for detached reflection would hardly have exited the toll booth at lane 3X and have begun to travel northerly in one of the two southbound lanes of Route 787 on the accident date, a motorist jockeying for position from lane 3X, which ends abruptly, to the unmarked exit lanes at interchange 23 and being required to move rather sharply to the right in a distance of approximately 100 yards without the aid of a “do not enter” sign near the jersey barrier might do exactly what Mr. Haverly did. Those Thruway personnel charged with the responsibility of erecting proper signage at interchange 23 failed to recognize that motorists place great reliance upon the presence of “do not enter” signs at appropriate entrance and exit ramps of the Thruway and State highways and expressways. Photographs introduced at the trial demonstrate not only the presence of 15 or more traffic signs in the area of the subject toll plaza, the Route 9W entrance and exit ramps, and the northbound and southbound ramps of Route 787 for motorists exiting at the toll booths, but also the absence of a “do not enter” sign at the jersey barrier separating the northbound and southbound lanes of Route 787. Particularly significant is the fact that both the ramp leading from the southbound lanes of Route 787 to the toll plaza and the ramp leading northbound from the toll plaza to the northbound lanes of Route 787 slope downward as regards a motorist exiting the toll booths at interchange 23 so as to obscure other motor vehicles.
Traffic signs at Thruway exits serve not only the obvious and necessary purpose of informing motorists concerning upcoming routes of travel but also of warning motorists of any concomitant danger as they pass to other highways or roadways. Section 1680 of the Vehicle and Traffic Law requires the Department of Transportation to adopt a manual that contains standards and specifications for the design, location, use and operation of traffic control devices on highways within the State. The MUTCD is the mandated manual promulgated by the Department of Transportation relative to traffic control devices.
The State, public authorities and municipalities have the duty to warn motorists of dangerous conditions on highways of which they have actual or constructive notice and to protect motorists by appropriate barriers, guardrails and traffic control devices (see, Friedman v State of New York, 67 NY2d 271; Lopes v Rostad, 45 NY2d 617; Hicks v State of New York, 4 NY2d 1; 65 NY Jur 2d, Highways, Streets, and Bridges, §§ 390-391). Al *972 though such duty is nondelegable, the law is nevertheless settled that in the field of highway design engineering a qualified immunity from liability arising out of a highway planning is accorded (Friedman v State of New York, 67 NY2d 271, 283, supra; Alexander v Eldred, 63 NY2d 460, 465-466). Trial courts are cautioned not to substitute their judgment for rationally considered engineering decisions. However, under the doctrine of qualified immunity “a governmental body may be held liable when its study of a traffic condition is plainly inadequate or there is no reasonable basis for its traffic plan” (Friedman v State of New York, supra, at 284, citing Alexander v Eldred, supra). In the present case, the proof is undisputed that when the interchange 23 toll plaza was modified in 1986 to add two new lanes and toll booths, no requisite traffic safety studies were performed to determine the effect of the changes as regards the safety of motorists entering and exiting the Thruway (see, Bounauito v Floyd School Dist., 203 AD2d 225). Indeed, the Thruway Director of Traffic Engineering, H. Peter Gustafson, conceded that he was not aware of any traffic safety study that had been conducted at interchange 23 as regards traffic safety signage.
Under part 200 of the MUTCD certain requirements relative to traffic control devices are set forth. Appropriately, the manual instructs:'“[A] traffic control device should meet five basic requirements. Each device should fulfill a need; command attention; convey a clear, simple meaning; command the respect of road users; and give adequate time for proper response” (MUTCD § 200.1 [e] [1]). It further instructs that features such as “shape, color, size, composition, contrast * * * should combine to draw attention to the device * * * and simplicity of message should produce a clear meaning” (MUTCD § 200.1 [e] [2] [i]); “[d]evices should be placed so that they are within the intended viewer’s field of vision to attract his, or her, attention” and “should be properly positioned with respect to the point, object, or situation to which they apply to aid in conveying the proper meaning” (MUTCD § 200.1 [e] [2] [ii]); “[Operative devices should function in a uniform and consistent manner to assure, to the extent possible, that drivers will properly respond to them, based on their previous experience with similar devices” (MUTCD § 200.1 [e] [2] [iii]); and “[ujniformity of devices, and the manner in which they are used, simplifies the road user’s tasks by aiding in recognition and understanding” (MUTCD § 200.1 [e] [2] [v]). Section 200.2 of the MUTCD sets forth requisite guiding principles relating to traffic control de *973 vices and highway safety. It provides, inter alla, that “[t]he application of traffic control devices should be based on sound engineering principles in conjunction with studies of traffic flow, accidents, speeds, delays, and physical conditions. Proper studies identify the nature of traffic problems and lead to correct determinations as to what devices or methods of control are needed” (MUTCD § 200.2 [f]); and “[decisions ón use of traffic control devices should be based on engineering studies” (MUTCD § 200.2 [g]).[5]
Although engineering studies had not been performed at interchange 23 with respect to traffic safety signage, defendant nevertheless was made aware of the need for additional “do not enter” signs by an interoffice memorandum, dated December 27, 1990, from Arthur J. O’Donnell, defendant’s Assistant Engineer for its Albany Division, to Mr. Gustafson, which reads: “Please review do not enter signs at exit 23 — I think we need a few more? If you agree please issue a Sign Order.” The record is devoid of any proof that Mr. Gustafson or any other supervisory personnel of defendant acted on Mr. O’Donnell’s request. Mr. Gustafson’s suggestion at the trial that the “do not enter” sign located at the right corner of the base of the entrance ramp from Route 9W served the dual purpose of warning motorists not to enter either the one-way down ramp of Route 9W or the deceleration ramp of Route 787 southbound is clearly erroneous. An examination of the photographs introduced at the trial demonstrates that the position of such “do not enter” sign and an identical sign on the opposite side of the down ramp served only to instruct motorists exiting the Thruway that they should not enter such one-way down ramp from Route 9W. Moreover, any motorist who *974 exited the Thruway at the toll booth for lane 3X to reach Route 787 southbound or Route 9W was required to drive rather sharply to the right away from the “do not enter” signs at the base of the entrance ramp leading from Route 9W. In addition to Mr. O’Donnell’s warning or suggestion that additional “do not enter” signs were needed at interchange 23, a 1985 report of a State Trooper that was forwarded to the Thruway Authority cited the risk of a head-on collision at interchange 23.
The familiar and distinctive “do not enter” sign with its white legend on a red background (MUTCD § 213.4 [a] [4]) placed at the end of a one-way roadway to warn motorists approaching from the opposite direction constitutes the clearest of warnings. Indeed, the MUTCD mandates that the red and white “do not enter” signs (R3-15) “shall be used at the end of a one-way roadway where there is an approach from the opposite (head-on) direction” (MUTCD § 213.4 [b] [3]) (emphasis supplied). The use of the commandment “shall” with respect to design, application and placement of traffic control devices is a “mandatory condition” and “[n]'o discretion” is allowed (MUTCD § 200.5).
Although a supplemental “do not enter” sign was not mandated but rather permitted at the “far left corner” of Route 787 southbound as seen by drivers exiting the toll plaza (MUTCD § 213.4 [c] [6]), the court concludes, especially in view of the confluence of roadways and the presence of multiple traffic signs at interchange 23, that defendant, in the exercise of reasonable care for motorists using interchange 23, should also have placed a ground-mounted “do not enter” sign at such far left corner. Furthermore, in the exercise of reasonable care, defendant should have erected on Route 787 southbound, a short distance beyond “do not enter” signs, red and white “wrong way” signs (R3-16). “Where used, R3-16 signs should be placed at suitable locations on one-way roadways, facing wrong-way traffic. They should be placed on the right side, and preferably both sides, of the roadway with respect to traffic in the wrong direction” (MUTCD § 213.4 [c] [9]).
Initially, Mr. Gustafson attempted to suggest that there was insufficient room for a “do not enter” sign to the right of the deceleration ramp of Route 787 southbound. Claimant’s expert, Nicholas Bellizzi, a consulting engineer with substantial experience in traffic engineering, demonstrated that sufficient room for such “do not enter” sign existed and also advised of the critical importance of such sign for both motorists approaching the toll plaza from Route 787 southbound and motorists exit *975 ing the toll plaza. Ultimately, Mr. Gustafson conceded the feasibility of making room for a “do not enter” sign on the far right corner of Route 787 southbound.
One can conclude that the suggestion of Mr. O’Donnell, defendant’s Assistant Engineer for the Albany Division, that more “do not enter” signs were needed at interchange 23 and the observations of certain toll booth operators concerning motor vehicles beginning to enter Route 787 southbound after their operators had exited the toll booths justify a finding of actual notice of the dangerous condition existing at interchange 23 (see, Karl v State of New York, 279 NY 555; Laitenberger v State of New York, 190 Misc 633, affd 273 App Div 942). Apart from the court’s belief that, despite the absence of Thruway records demonstrating prior accidents caused by the absence of “required” “do not enter” and “wrong way” signs, unreported near accidents undoubtedly occurred where Route 787 southbound joined the toll plaza, proof of prior accidents is only one method by which a claimant may prove notice that a dangerous condition existed and that defendant had constructive notice of it (Guido v State of New York, 248 AD2d 592; Gillooly v County of Onondaga, 168 AD2d 921). Alternatively, a claimant may prove that the defect was so obvious and had existed for such a period of time that a defendant should have discovered and corrected it (Adam v Town of Oneonta, 217 AD2d 894; Gillooly v County of Onondaga, supra; Waddingham v State of New York, 90 AD2d 855; Rinaldi v State of New York, 49 AD2d 361; see, Blake v City of Albany, 48 NY2d 875).
As regards the present claim, the absence of the “do not enter” and “wrong way” signs for a protracted period of time before the subject accident was so patent that defendant, charged with the duty to maintain the Thruway in a reasonably safe condition, should have corrected the omission of the “do not enter” and “wrong way” signs. In failing to adhere to the provisions of the MUTCD, defendant was negligent. Contrary to defendant’s argument, the presence of a “do not enter” sign on the overhead sign bridge at interchange 23 did not obviate the necessity of ground-mounted “do not enter” signs. A supplemental overhead “do not enter” sign was not authorized to supplant the required mandatory ground-mounted “do not enter” sign, but rather to serve as “[a]dded driver safety and convenience” when placed “directly over lanes to which they apply” (MUTCD § 201.5 [c]) (emphasis supplied). In the instant case the “do not enter” sign on the overhead sign bridge was positioned over only the left-hand lane of Route 787 *976 southbound when observed by a motorist exiting the interchange 23 toll booths. Similarly, the “keep right” sign with its black symbols on a white background in front of the jersey barrier was optional, not mandatory (MUTCD § 214.3 [a] [1]), and did not command the attention generated by red and white “do not enter” and “wrong way” signs so as to relieve the defendant of liability.
The final liability issues relate to proximate cause and the culpability of Mr. Haverly and claimant. Essentially, defendant permitted a dangerous condition to exist that could have been remedied by the erection of “do not enter” and “wrong way” signs, and such condition made the subject accident both foreseeable and reasonably probable. However, despite the absence of required “do not enter” and “wrong way” signs as previously described and Mr. Haverly’s being required to move sharply to the right after leaving the toll booth at lane 3X to travel upon Route 787 northbound, his being required to jockey for position as other motorists departed the toll booths, the relatively short distance of 310 feet to the jersey barrier and the existence and proliferation of traffic signs, he nevertheless should have exhibited a greater degree of alertness. The court also concludes that Mr. Haverly, too, was negligent and that his negligence constituted a proximate cause of the accident. As regards claimant, proof was not presented that he was negligent, and defendant does not argue to the contrary.
The precedent negligence of defendant placed claimant and Mr. Haverly in a position of danger and was a proximate cause of the subject accident; consequently, the court finds defendant 60% liable for the happening of the accident and any damages suffered by claimants as a result of the subject accident. The court further finds that Mr. Haverly’s negligence contributed to the subject accident and claimants’ damages to the extent of 40%.
All trial and posttrial motions not previously ruled upon are denied.

. Referred to hereinafter as the Thruway.

. At the toll plaza itself, the compass directions are different in reality, but the designation of north-south directions in this decision will serve to avoid confusion as regards compass directions in view of the general designation of two lanes of Route 787 as northbound and two lanes of Route 787 as southbound.

. Subsequent references will be to sections of the MUTCD rather than to title 17 of the New York Codes, Rules and Regulations.

. A distinction is drawn between the violation of (1) a statute, (2) an ordinance, rule or regulation, and (3) a guideline. A statute may impose absolute liability for its violation regardless of fault (sometimes called liability per se); it may establish negligence (sometimes called negligence per se); or it may constitute evidence of negligence. The unexcused breach of an ordinance, rule or regulation is some evidence of negligence provided such violation is a proximate cause of the accident (Rizzuto v Wenger Contr. Co., 91 NY2d 343; Long v Forest-Fehlhaber, 55 NY2d 154; Conte v Large Scale Dev. Corp., 10 NY2d 20; Major v Waverly & Ogden, 7 NY2d 332). A guideline, which is an indication or outline of policy or conduct, is of lesser weight than a rule or regulation. In certain situations the violation of a guideline may be some evidence of negligence (see, Cipriano v State of New York, 171 AD2d 169, lv denied 79 NY2d 756; Boyd v State of New York, 103 AD2d 882) provided such violation is a proximate cause of an accident. The MUTCD, as previously noted, is part of the official compilation of Codes, Rules and Regulations of the State of New York.