■ KAROLETTE W. JAMES, Individually and as Administrator of the Estate of GLADSTONE L. JAMES, JR., Deceased, Appellant, v NEW YORK STATE BRIDGE AUTHORITY, Respondent. [743 NYS2d 151] —In an action to recover damages for personal injuries and wrongful death, etc., the plaintiffs appeal from an order of the Supreme Court, Orange County (Peter C. Patsalos, J.), dated September 7, 2001, which granted the defendant's motion for summary judgment dismissing the complaint.

Ordered that the order is affirmed, with costs.

The plaintiff's decedent, Gladstone Leeds James, Jr., a tractor-trailer operator, was killed when the tractor-trailer he was driving struck a guardrail on a curve approaching the Newburgh-Beacon Bridge in Orange County. The decedent's vehicle was traveling in excess of 70 miles per hour, in the rain, on a section of roadway where the speed limit for optimum conditions was 55 miles per hour. The plaintiff commenced this action against the New York State Bridge Authority (hereinafter the Bridge Authority) alleging, inter alia, that the Bridge Authority was negligent in failing to provide safe speed limits and proper warnings on the curve where the accident occurred.

In the field of highway safety planning, a municipality is immune from liability for negligence for acts involving discretion

(see *Tomassi v Town of Union,* 46 NY2d 91, 97; *Lewis v State of New York,* 70 AD2d 706, 708), unless its plan or design was adopted without adequate study or lacked a reasonable basis (see *Weiss v Fote,* 7 NY2d 579, 589; *Puliatti v State of New York,* 91 AD2d 1192). A governmental body may be held liable only when its study of a traffic condition is plainly inadequate or there is no reasonable basis for its traffic plan (see *Friedman v State of New York,* 67 NY2d 271, 284; *Alexander v Eldred,* 63 NY2d 460, 466).

The Bridge Authority raised the speed limit on the subject curve from 40 miles per hour to 55 miles per hour as part of a two-year study upon the recommendation of the engineering firm it had hired to conduct a speed report. The speed report addressed and considered the geometric configuration of the roadway before making recommendations, which the Bridge Authority adopted. In fact, the expressed focus of the study was the "potential impact of [an increased speed limit] on issues such as conformance with standard design criteria, safety and maintenance." The speed report based its recommendation upon studies by the Institute of Transportation Engineers which stated that in many cases where the speed limits were raised, the speed limit patterns were narrowed and lowered. Under these circumstances, the Bridge Authority established that it has qualified immunity, the opinions of the plaintiff's expert contradicting the speed report notwithstanding (see *Affleck v Buckley,* 96 NY2d 553, 557; *Schuster v McDonald,* 263 AD2d 473, 474).

In light of our determination, we need not address the parties' remaining contentions. Ritter, J.P., Smith, Luciano and Crane, JJ., concur.