■ COLIN CAMPBELL, Appellant, v CITY OF GLEN COVE, Respondent, et al., Defendant. [798 NYS2d 118]—In an action to recover damages for personal injuries, the plaintiff appeals from a judgment of the Supreme Court, Nassau County (Dunne, J.), dated November 3, 2003, which, upon a jury verdict on the issue of liability, and upon an order of the same court entered August 11, 2003, denying his motion pursuant to CPLR 4404 (a) to set aside the verdict as against the weight of the evidence and for judgment as a matter of law, is in favor of the defendant City of Glen Cove and against him, in effect, dismissing the complaint insofar as asserted against that defendant.

Ordered that the judgment is affirmed, with costs.

"For a court to conclude as a matter of law that a jury verdict is not supported by sufficient evidence . . . [i]t is necessary to . . . conclude that there is simply no valid line of reasoning and permissible inferences which could possibly lead rational [people] to the conclusion reached by the jury on the basis of the evidence presented at trial" (*Cohen v Hallmark Cards,* 45 NY2d 493, 499 [1978]). Furthermore, "[a] jury verdict in favor of a defendant should not be set aside [as against the weight of the evidence] unless the jury 'could not have reached the verdict on any fair interpretation of the evidence'" (*Nicastro v Park,* 113 AD2d 129, 134 [1985], quoting *Delgado v Board of Educ.,* 65 AD2d 547 [1978], *affd* 48 NY2d 643 [1979]). In this case, the jury rationally could have concluded that the defendant City of Glen Cove was not negligent. Furthermore, the jury verdict was supported by a fair interpretation of the evidence. Accordingly, the verdict should not be disturbed. H. Miller, J.P., Schmidt and Adams, JJ., concur.

Goldstein, J., dissents and votes to reverse the judgment appealed from, to grant the plaintiff's motion to set aside the jury verdict as against the weight of the credible evidence and grant a new trial, and to modify the order entered August 11, 2003, accordingly, with the following memorandum: On the morning of March 17, 1999, the plaintiff was driving a tractor-trailer truck known as a "low boy" which sits close to the ground. The plaintiff turned onto Elm Avenue in the City of Glen Cove, and attempted to cross a Long Island Rail Road (hereinafter LIRR) crossing. He had never driven over that railroad crossing before and did not observe that the road dipped downward on the other side of the tracks. As he proceeded over the railroad crossing, the bottom of the low boy became stuck against the tracks. While the truck was straddling the tracks, it was hit by a train.

The plaintiff brought this action, against, among others, the City alleging that the City's failure to install a "vertical curve

warning sign" along Elm Avenue, alerting drivers that the railroad crossing is a "high profile crossing" on which trucks with low ground clearance may become stuck, constituted a failure to maintain the road in a reasonably safe condition. The jury found that the City was not negligent and did not reach the question of whether the absence of the sign was a proximate cause of the accident. The plaintiff's motion to set aside the verdict and for judgment as a matter of law was denied and judgment was entered in favor of the City. I would reverse.

At trial, the plaintiff testified that any time he saw a vertical curve warning sign "I would either back up or detour and go around another route." According to the plaintiff, such a sign had been used at other locations "for years." The plaintiff's expert, a traffic engineer, testified that the rule implementing the "vertical curve warning sign" (see 17 NYCRR 200 Appendix A-19, 95-9) went into effect on June 9, 1995, nearly four years before the accident. The rule authorized use of the sign "at railroad-highway grade crossings where abrupt changes in roadway profile may cause vehicles with low ground clearances to get stuck." In the expert's opinion, the sign "was absolutely required . . . for this railroad crossing because it was obvious just looking at it that it was a very sharp grade."

Ralph J. Napolitano, the former Federal Railroad Administrator/Manager of Tests and Standards, investigated the accident immediately after it occurred and noted in his report that the crossing "was missing the . . . signage." The crossing was a high-profile crossing, defined as a roadway which has more than a "six-inch deviation when measured from 30 feet from [the] gauge of rail." In his opinion, the sign should have been in place. He further testified that since the road was maintained by the City, it was the City's obligation to post the sign.

The City did not dispute that it was its obligation to maintain the road and to post appropriate signage. The City further acknowledged that it had the authority to determine what signage was appropriate "independent" of the LIRR. It claimed that it did not post a vertical curve warning sign at the crossing before the accident because it was not familiar with the sign and had not received any direction to do so from the LIRR.

The City acknowledged that it had no protocol for inspecting and/or improving the safety of railroad crossings other than to await instruction from the LIRR. In March 1998 the Public Transportation Safety Board, a federal agency, asked the LIRR to identify high-profile grade crossings after a similar accident occurred at another location. The survey, which was completed

by January 1999, identified the crossing where the instant accident occurred as a high-profile crossing that should be posted with a vertical curve warning sign. However, at the time of the accident, the City had received no communication from the LIRR advising it of the results.

It is undisputed that the City did not require the LIRR's approval to post the sign. The request for a sign could be approved by either the city council or the police department. The City's Director of Public Works testified at the trial that the City's decision to post a vertical curve warning sign was "discretionary." Although he agreed that the crossing where the accident occurred was a "profile" crossing, he stated, contrary to the other testimony in the record, that he did not know if it "is considered a high profile" crossing.

The law is well settled that "a governmental body, be it the State, a county or a municipality, is under a nondelegable duty to maintain its roads and highways in a reasonably safe condition, and that liability will flow for injuries resulting from a breach of the duty" (*Lopes v Rostad,* 45 NY2d 617, 623 [1978]; *see Atkinson v County of Oneida,* 77 AD2d 257, 259 [1980]). The duty extends to the duty of warning of traffic hazards (*see Alexander v Eldred,* 63 NY2d 460, 466 [1984]). A municipality enjoys a qualified immunity where it acted in accordance with a highway safety plan (*see Friedman v State of New York,* 67 NY2d 271, 283 [1986]; *Martin v State of New York,* 305 AD2d 784 [2003]).

However, in the instant case, the City did not act in accordance with any plan (*see Alexander v Eldred, supra* at 466). Rather, the City claimed that it was ignorant of the nature of the sign and whether the crossing where the accident occurred should be considered a high-profile crossing. Accordingly, there was no discretionary determination by the municipality upon which to base a claim of qualified immunity (*see Friedman v State of New York, supra* at 284; *Norton v Village of Endicott,* 280 AD2d 853, 854-855 [2001]). The City's claimed ignorance constituted additional evidence of its negligence (*see Alexander v Eldred, supra* at 466).

The City's primary defense was that it delegated the responsibility to determine proper signage to the LIRR. However, there was no evidence in the record of any agreement or legislative authorization to delegate such responsibility to the LIRR (*see Nowlin v City of New York,* 81 NY2d 81 [1993]; *Gregorio v City of New York,* 246 AD2d 275, 279 [1998]). In any event, since "[a] municipality has a nondelegable duty to the public to keep its streets and highways in a reasonably safe condition" (*id.* at

278), even the existence of such an agreement or authorization would not have relieved the City of its responsibility (*id.* at 278-279). The fact that the LIRR did not instruct the City to post the sign is no defense.

The City introduced evidence that the plaintiff's vehicle was overweight. Its expert testified that the plaintiff should have reviewed the route in advance and should have been able to see the grade of the road as he approached the crossing. This evidence was relevant to the issues of proximate cause and comparative fault, not to the issue of whether the City was negligent.

In view of the foregoing, the jury's determination that the City was not negligent could not have been reached on any fair interpretation of the evidence (*see Nicastro v Park,* 113 AD2d 129, 134 [1985]) and should be set aside as against the weight of the credible evidence.