■ Rhonda Wittorf, Appellant, v City of New York, Respondent. [961 NYS2d 432]—

Order, Supreme Court, New York County (Paul G. Feinman, J.), entered August 17, 2011, which, inter alia, granted defendant's motion to set aside the jury verdict on the ground that plaintiff failed to establish a prima facie case, affirmed, on the law, without costs.

On November 5, 2005, plaintiff and her boyfriend rode their bicycles to the entrance of the Central Park transverse road at West 65th Street, where a City Department of Transportation (DOT) crew supervisor was in the process of setting up warning cones to close off both lanes of the road to vehicular traffic before starting to repair a "special condition" in the transverse. The supervisor testified that a "special condition" was a defect "bigger than a pothole" but "less involved" than road resurfacing.

Plaintiff's boyfriend asked the supervisor if they could ride through, and he told them "go ahead." Although plaintiff's boyfriend crossed the transverse safely, plaintiff was injured when she struck a large pothole.

The jury found that the roadway where the accident occurred was not in a reasonably safe condition. However, the City could not be held liable on that basis because the jury found that the City had not received timely written notice of the particular defect and did not cause or create the condition by an affirmative act of negligence. The sole basis for the City's liability was the jury's findings that the supervisor was negligent in allowing plaintiff to enter the transverse and that his negligence was a substantial factor (60%) in causing plaintiff's injuries.

The trial court orally denied plaintiff's motion to set aside the verdict on prior written notice, cause and create, comparative negligence (40%) and additur. Subsequently, the trial court granted defendant's written motion pursuant to CPLR 4404 to set aside the verdict on the ground that the City was immune from liability because the supervisor was engaged in the discretionary governmental function of traffic control, not the proprietary function of street repair, when he allowed plaintiff to proceed.

" '[G]overnment action, if discretionary, may not be a basis for liability, while ministerial actions may be, but only if they violate a special duty owed to the plaintiff, apart from any duty to the public in general' " (*Valdez v City of New York*, 18 NY3d 69, 76-77 [2011], quoting *McLean v City of New York*, 12 NY3d 194, 203 [2009]). Accordingly, "even if a plaintiff establishes all elements of a negligence claim, a state or municipal defendant engaging in a governmental function can avoid liability if it timely raises the defense and proves that the alleged negligent act or omission involved the exercise of discretionary authority" (*id.* at 76; *see also McLean* at 202). In contrast, when performing a proprietary function, the governmental entity is generally subject "to the same duty of care as private individuals and institutions engaging in the same activity" (*Schrempf v State of New York*, 66 NY2d 289, 294 [1985]).

"A governmental function generally is defined as one 'undertaken for the protection and safety of the public pursuant to the general police powers' " (*Murchinson v State of New York*, 97 AD3d 1014, 1016 [3d Dept 2012], quoting *Balsam v Delma Eng'g Corp.*, 90 NY2d 966, 968 [1997]). A proprietary function is one in which "governmental activities essentially substitute for or supplement traditionally private enterprises" (*Sebastian v State of New York*, 93 NY2d 790, 793 [1999] [internal quotation marks omitted]).

" 'A governmental entity's conduct may fall along a *continuum of responsibility* to individuals and society deriving from its governmental and proprietary functions . . . [and] any issue relating to the safety or security of an individual claimant must be carefully scrutinized to determine the point along the continuum that the State's alleged negligent action falls into, either a proprietary or governmental category' " (*Matter of World Trade Ctr. Bombing Litig.*, 17 NY3d 428, 446 [2011], *cert denied* 568 US —, 133 S Ct 133 [2012], quoting *Miller v State of New York*, 62 NY2d 506, 511-512 [1984]). In performing this analysis, a court must examine "the specific act or omission out of which the injury is claimed to have arisen and the capacity in which that act or failure to act occurred . . . , not whether the agency involved is engaged generally in proprietary activity or is in control of the location in which the injury occurred" (*Miller* at 513 [internal quotation marks omitted]; *see also Matter of World Trade Ctr. Bombing Litig.* at 447).

The dissent believes that the City must be held liable for the supervisor's failure to warn her of the dangerous condition in the transverse, or for his negligently waving her into a place of danger, because those acts were integrally related to the pothole repair undertaken by the City in a proprietary capacity. However, at the time of plaintiff's accident, the repair work had not begun, and the supervisor was engaged in traffic control, which is "a classic example of a governmental function undertaken for the protection and safety of the public pursuant to the general police powers" (*see Balsam v Delma Eng'g Corp.*, 90 NY2d at 968; *see also Santoro v City of New York*, 17 AD3d 563 [2005]; *Devivo v Adeyemo*, 70 AD3d 587 [1st Dept 2010]). Thus, the City is entitled to governmental function immunity because the specific act or omission that caused plaintiff's injuries was the supervisor's discretionary decision to allow plaintiff to proceed since his crew had not completed its preparations for the road work, and not the City's proprietary function in maintaining the roadway (*see Clinger v New York City Tr. Auth.*, 85 NY2d 957, 959 [1995]; *Kadymir v New York City Tr. Auth.*,

55 AD3d 549, 552 [2d Dept 2008]). When plaintiff encountered the supervisor, he was not at the entrance of the transverse to repair potholes; the repair was to take place later, under the second overpass, which, according to plaintiff's boyfriend, was a "good distance" away. The fact that the supervisor was a DOT employee and not a police officer is of no consequence. Controlling traffic is a governmental function.

Plaintiff also argues that the jury's finding that the City had not received written notice of the roadway condition was against the weight of the credible evidence. Plaintiff asserts that there was written notice of the defect as far back as July 13, 2005, nearly four months before her accident.

Administrative Code of City of NY § 7-201 (c) (2) requires plaintiffs to show that the City received prior written notice of the alleged defect to maintain an action. The notice must designate the specific defect alleged in the complaint (*see Belmonte v Metropolitan Life Ins. Co.*, 304 AD2d 471, 474 [1st Dept 2003]), and the awareness of one defect in the area is inadequate notice of another defect that caused the accident (*see Roldan v City of New York*, 36 AD3d 484 [1st Dept 2007]).

Weighing the documentary evidence related to the purported written notice, which addressed defects in the eastbound lane, in conjunction with the testimony of plaintiff and the supervisor with respect to the location of the pothole that caused the accident, the jury could rationally conclude that the City did not have the requisite prior written notice of the specific roadway defect (*see Cohen v Hallmark Cards*, 45 NY2d 493, 499 [1978]). The supervisor testified at his deposition that he remembered that the subject pothole was in the westbound, not the eastbound, lane of the transverse, and that the memory was "frozen" in his mind. Plaintiff testified that she was closer to the yellow line than her boyfriend while traveling in the eastbound lane and had just moved to the left when she encountered the pothole. The jury was free to resolve the conflicts in the evidence and the issues of credibility in defendant's favor (*see McDermott v Coffee Beanery, Ltd.*, 9 AD3d 195, 206, 207 [1st Dept 2004]).

We have considered plaintiff's other arguments and find them unavailing. Concur—Tom, J.P., Andrias, Saxe and DeGrasse, JJ.

Manzanet-Daniels, J., dissents in a memorandum as follows: On the date of the accident, plaintiff and a companion rode their bicycles to the entrance of the Central Park transverse road at West 65th Street. When they arrived at the transverse, a City Department of Transportation (DOT) employee, who had been sent to the area to repair damaged sections of roadway in

the transverse, was in the process of blocking the entrance to vehicular traffic. Plaintiff's companion asked the DOT employee if they could cross the park using the transverse, and the employee allowed them to proceed.

Although her companion crossed the transverse unharmed, plaintiff struck a large pothole, sustaining severe facial injuries, including fractures of her upper jaw bone, the loss of four front teeth, and avulsion injuries of her lips, chin, nose and face, requiring, to date, more than 21 surgeries to repair. Plaintiff alleges that the injuries she sustained were caused by the negligence of the DOT worker who permitted her to cross the park, knowing that there was a defect in the transverse, without providing adequate warning of the hazard. After the jury found that the DOT worker's conduct was negligent and proximately caused plaintiff's injuries, the court granted defendant's motion pursuant to CPLR 4404 to set aside the verdict on the ground that the City was immune from liability since the DOT worker's conduct involved a discretionary act in connection with a governmental function. The majority now affirms.

It is well settled that the City may be held liable for negligence in the exercise of its "proprietary duty" to keep the roads and highways under its control in a reasonably safe condition (*see Balsam v Delma Eng'g Corp.*, 90 NY2d 966 [1997]; *Friedman v State of New York*, 67 NY2d 271, 283 [1986]), and that the duty to maintain the roads includes an obligation to adequately warn users of "existing hazards" in the road (*see Hicks v State of New York*, 4 NY2d 1, 7 [1958]; *Alexander v Eldred*, 63 NY2d 460, 463-464 [1984]; *Levine v New York State Thruway Auth.*, 52 AD3d 975, 976-977 [3d Dept 2008]).

"[I]t is the specific act or omission out of which the injury is claimed to have arisen and the capacity in which that act or failure to act occurred which governs liability, not whether the agency involved is engaged generally in proprietary activity or is in control of the location in which the injury occurred" (*Miller v State of New York*, 62 NY2d 506, 513 [1984] [internal quotation marks omitted]). In this case, the DOT employee's claimed negligent act or omission was permitting plaintiff to use the roadway without providing any warning of a known dangerous condition. That conduct occurred while he was engaged in physical maintenance of the road, a proprietary act (*see Levine* at 976-977; *Grant v Ore*, 284 AD2d 302, 303 [2d Dept 2001]; *compare Balsam*, 90 NY2d at 968 ["No claim is made here that the police were charged with the responsibility to physically maintain the property (an icy road) where plaintiff's accident occurred"]).

In my opinion, the majority takes too narrow a view of governmental functions. The majority focuses on the DOT employee's actions in waving plaintiff and her companion through, rather than on the roadway activity the crew had been dispatched to perform, which clearly falls along the continuum of a proprietary function. The decision to allow plaintiff to proceed along the transverse cannot be viewed separately from the City's proprietary function in maintaining the roadway. Here, the DOT employee was in the process of barricading an entrance to the traverse, an activity integral to his overall assignment of repairing hazardous roadway conditions. The fact that the specific function of barricading a street as part of a maintenance project might be one performed by a police officer, in my view, is not determinative of the governmental or proprietary nature of the activity. The DOT employee was not engaged in a traffic control exercise but rather was performing an act integral to his roadway maintenance duties. Accordingly, I would reverse the trial court's order and reinstate the jury verdict. **[Prior Case History: 33 Misc 3d 368.]**