**Alfred SMITH, Plaintiff,**

**v.**

**HALF HOLLOW HILLS CENTRAL SCHOOL DISTRICT, Board of Education Half Hollow Hills Central School District, Dr. Kevin McGuire, Individually and as Superintendent of Schools, Half Hollow Hills Central School District; Selena Isles Smith, Individually and in her capacity as Principal, West Hollow Middle School, Half Hollow Hills Central**

School District, and Thomas O'Rourke, Individually and in his capacity as Guidance Counselor, West Hollow Middle School, Half Hollow Hills Central School District, Defendants.

No. CV 03–4404.

United States District Court, E.D. New York.

Dec. 1, 2004.

Harriet A, Gilliam, Esq., Riverhead, NY, for Plaintiff.

Ingerman, Smith, L.L.P. by Susan E. Fine, Esq., Northport, NY, for Defendants.

*MEMORANDUM AND ORDER*

WEXLER, District Judge.

Plaintiff commenced this action claiming that he was injured while attending school

in the Defendant school district. Specifically, it is claimed that injuries suffered by Plaintiff in a middle school cafeteria are attributable to the negligence of Defendants who failed to provide a safe school environment. Named as defendants are the Half Hollow Hills Central School District (the "School District"), the School District's Board of Education, Dr. Kevin McGuire, the Superintendent of the School District during the relevant time period, Selena Isles Smith, the middle school principal, and Thomas O'Rourke, a guidance counselor employed at the middle school during the relevant time period (collectively "Defendants").

Plaintiff was injured in 1997 and commenced a federal case in 1998. That case, which was assigned to a different judge in this district, alleged both federal and state law claims. In an order dated June 26, 2002, the court granted Defendants' motion for summary judgment dismissing Plaintiff's federal claims. Plaintiff's state law negligence claims were preserved with the right to pursue such claims in state court. After dismissal, Plaintiff relocated and became a resident of the State of North Carolina. He thereafter commenced this action in pursuit of his remaining state law negligence claims. Federal jurisdiction is now based upon diversity of citizenship.

Shortly after this diversity case was commenced, Defendants moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. When ruling on that motion, this court noted that Defendants relied on matters outside of the pleadings including documents generated in the course of the School District's business as well as deposition testimony. The court elected to treat the motion as one for summary judgment and gave all parties additional time in which to present all material "made

pertinent to such a motion by Rule 56." FRCP 12(b)(6); *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir.2000). The parties were given leave to take discovery and were directed to enter into a final and expedited discovery and briefing schedule.

Having completed discovery, Defendant's motion for summary judgment is now properly before the court. For the reasons that follow, the motion is granted.

## BACKGROUND

### I. *Factual Background*

The facts set forth below are gleaned from the deposition and documentary testimony presented by the parties and are presented in the light most favorable to Plaintiff, the non-moving party.

### A. *The Incident and Plaintiff's Complaint*

Plaintiff was a middle school student in the Defendant School District in 1997. The incident forming the basis of the complaint took place on September 16, 1997, while Plaintiff was eating lunch at the middle school cafeteria. Plaintiff alleges that on that day he was attacked by Baarik Hogan, a fellow student ("Hogan"). According to Plaintiff, Defendants were aware of Hogan's propensity for violence, yet did nothing to protect Plaintiff prior to the attack or intervene in any way to stop the attack.

The alleged failure to protect Plaintiff forms the basis for his first cause of action for negligently failing to provide a safe academic environment. Plaintiff's complaint also sets forth a second cause of action. This claim alleges that defendants failed to take "appropriate corrective measures before and after the assault ... and continued to allow an unsafe educational environment to exist, causing plaintiff physical and emotional harm and causing

him to transfer to a private educational institution." Among the damages allegedly suffered by Plaintiff are emotional harm as well as physical injuries to his neck, back and shoulders.

### B. *Defendants' Motion*

Presently before the court is Defendants' motion for summary judgment. The motion argues that, after completing discovery, Plaintiff has come forward with no facts supporting a finding of either breach of the school's duty to supervise or proximate cause between any alleged breach and the claimed injuries. After outlining relevant legal principles the court will turn to the merits of the motion.

## DISCUSSION

### I. *Legal Principles*

#### A. *Summary Judgment Standards*

A motion for summary judgment is granted only if the court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FRCP 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party seeking judgment bears the burden of demonstrating that no issue of fact exists. *McLee v. Chrysler Corp.* 109 F.3d 130, 134 (2d Cir.1997). However, when the nonmoving party fails to make a showing on an essential element of its case with respect to which it bears the burden of proof, summary judgment will be granted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party resisting summary judgment must not only show a disputed issue of fact, but it must also be a material fact in light of the substantive law. Only disputed facts that "might affect the outcome of the suit under the governing law will properly preclude the entry of summary judg-

ment." *Anderson*, 477 U.S. at 242, 106 S.Ct. 2505. When a moving party demonstrates the absence of a genuine issue of fact, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Summary judgment is not defeated by vague assertions of unspecified disputed facts. *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990).

### B. *A School's Duty to Supervise*

█ New York law imposes upon schools the duty to provide adequate supervision for its students and holds schools liable for injuries proximately caused by the failure to provide such supervision. *Mirand v. City of New York*, 84 N.Y.2d 44, 614 N.Y.S.2d 372, 375, 637 N.E.2d 263 (1994); *Speight v. City of New York*, 309 A.D.2d 501, 765 N.Y.S.2d 28, 29 (1st Dep't 2003). Imposition of this duty does not make schools insurers of the safety of their students, "for they cannot be reasonably expected to continuously supervise and control all movements and activities of students ....". *Mirand*, 614 N.Y.S.2d at 375, 637 N.E.2d 263; *see also Convey v. City of Rye Sch. Dist.* 271 A.D.2d 154, 710 N.Y.S.2d 641, 645 (2d Dep't 2000). To prevail in a case alleging liability for negligent supervision, plaintiff must establish a breach of the duty and that such breach was the proximate cause of the injury. *See generally Mirand*, 614 N.Y.S.2d at 375, 637 N.E.2d 263.

█ In a case alleging liability stemming from the violent act of one student toward another, breach of duty is established only by showing that the defendant school had specific, prior knowledge of the danger that caused the injury, "that is, that the third-party acts could reasonably have been anticipated." *Mirand*, 614 N.Y.S.2d at 375, 637 N.E.2d 263. Injuries caused by sudden, impulsive acts that are

not preceded by prior conduct cannot give rise to a finding of breach of the duty to supervise. *Morman v. Ossining Union Free Sch. Dist.*, 297 A.D.2d 788, 747 N.Y.S.2d 586, 587 (2d Dep't.2002).

■ The proximate cause prong of plaintiff's cause of action is satisfied only by showing that the "chain of events that followed the negligent act or omission was a normal or foreseeable consequence of the situation created by the school's negligence." *Mirand,* 614 N.Y.S.2d at 375, 637 N.E.2d 263. Where an assault occurs so suddenly that it could not have been prevented by any amount of supervision, proximate cause is not established and plaintiff cannot prevail. *Sanzo v. Solvay Union Free Sch. Dist.,* 299 A.D.2d 878, 750 N.Y.S.2d 252, 253 (4th Dep't 2002).

■ New York courts have not hesitated to grant summary judgment to school districts in cases where the district makes a prima facie showing of a lack of notice and/or proximate cause and plaintiff fails to come forward with factual evidence to the contrary. Many of those cases have been decided on facts strikingly similar to those here.

In *Sanzo v. Solvay Union Free Sch. Dist.,* 299 A.D.2d 878, 750 N.Y.S.2d 252, 253 (4th Dep't 2002), for example, plaintiff alleged a claim in negligent supervision arising from an assault by a fellow student in a high school cafeteria. The Appellate Division reversed the trial court's denial of summary judgment, holding that the school district met its burden of showing lack of specific knowledge of the danger that caused the injury. *Sanzo,* 750 N.Y.S.2d at 253. Although the principal in *Sanzo* was aware of prior verbal taunts between the students at issue, there was no evidence that either student had previously engaged in violent behavior that would give rise to a duty to supervise. *Id.* The court further held that the case was

properly dismissed on proximate cause grounds because the assault took place so suddenly as to make its prevention impossible by any additional supervision. *Id.*

Similarly, in *Nocilla v. Middle Country Cent. Sch. Dist.,* 302 A.D.2d 573, 757 N.Y.S.2d 300 (2d Dep't 2003), plaintiff alleged a lack of supervision after being assaulted in a hallway by a student who formerly attended the school. There too, the Appellate Division reversed a denial of a school district's motion for summary judgment, finding no material issue of fact as to the assaulting student's alleged "habitual presence" at his former school. *Nocilla,* 757 N.Y.S.2d at 301. Judgment was granted to the school district on the grounds that prior notice was not established and, in any event, the "sudden, unprovoked nature of the attack, as well as its short duration" established that the attack would have occurred "regardless of the District's level of supervision. . . ." *Id.* at 302.

As these and other New York cases make clear, prior, unrelated incidents resulting in discipline are insufficient to put a school on notice of a specific threat of danger requiring supervision. Thus, for example, in *Morman v. Ossining Union Free Sch. Dist.,* 297 A.D.2d 788, 747 N.Y.S.2d 586, 587 (2d Dep't 2002), the Appellate Division failed to charge the defendant school district with notice of the alleged attacker's violent propensities. This was held despite the fact that the assaulter had an "extensive disciplinary record" because most of the incidents in the record involved only acts of insubordinate behavior of a non-violent nature. *Id.* at 587. *See also Taylor v. Dunkirk City Sch. Dist.,* 785 N.Y.S.2d 623 (4th Dep't 2004); *Velez v. Freeport Union Free Sch. Dist.,* 740 N.Y.S.2d 364, 365 (2d Dep't 2002) (notice not established even where assaulter was previously disciplined for

fighting); *Nossoughi v. Ramapo Cent. Sch. Dist.*, 287 A.D.2d 444, 731 N.Y.S.2d 78, 79 (2d Dep't 2001) (prior notice of former student trespassing not established even where plaintiff offered evidence of previous trespassing because no prior incidents involved violence); *see also Anglero v. New York City Board of Educ.*, 304 A.D.2d 596, 758 N.Y.S.2d 162, 163 (2d Dep't 2003) (plaintiff may not rely on the assault itself to establish notice, where there is no evidence that school personnel were aware of the attack).

New York cases also make clear that proximate cause is not established in negligent supervision cases involving sudden, unprovoked acts that are of short duration. *See, e.g., Velez*, 740 N.Y.S.2d at 365 (assault occurred so quickly so that it could not have been prevented by "more intense" supervision); *Nossoughi*, 731 N.Y.S.2d at 79 (proximate cause not established where assault occurred "spontaneously with the entire incident taking less than one minute"); *Convey v. City of Rye Sch. Dist.*, 271 A.D.2d 154, 710 N.Y.S.2d 641, 646 (2d Dep't 2000) (proximate cause not established where incident lasted "less than one minute").

## II. *Disposition of the Motion*

### A. *Plaintiff's Testimony Regarding the Incident*

Plaintiff was deposed in October of 1998 and in October of 2000. The 1998 examination was taken pursuant to Section 50–H of New York's General Municipal Law and the 2000 deposition was taken pursuant to the Federal Rule of Civil Procedure. Plaintiff's testimony details his version of the alleged attack by Hogan.

Plaintiff testified that on the day of the attack he purchased lunch and the change from his lunch was on his tray. Hogan approached Plaintiff and told him to hand over his money. Plaintiff refused and, according to Plaintiff, Hogan walked away for a short period of time, described by Plaintiff as "like a second" or "maybe five or ten seconds." Hogan then he came back and grabbed Plaintiff, choking him from behind. Plaintiff managed to get out of his seat, twist Hogan's arm and push him into a vending machine. Plaintiff estimated the space between his seat at the lunch table to the vending machine as between ten and twenty feet.[1] As Plaintiff was pushing Hogan toward the vending machine, Plaintiff's friend attempted to stop the pair from fighting. Although that attempt was unsuccessful, the fight ended when Hogan hit the vending machine. Plaintiff estimated the time of the entire incident—from the time when Hogan attempted to choke Plaintiff, until the time when Hogan made contact with the vending machine, to be a total of thirty seconds.

After the incident, Plaintiff attended his next class. Because he did not feel well, he was given permission to see his guidance counselor, Defendant O'Rourke. O'Rourke called Plaintiff's mother who came to school to pick him up prior to dismissal. Plaintiff thereafter visited both his pediatrician and a chiropractor. Although he was in pain and missed gym class, he was able to return to his normal activities within two weeks of the incident. At the time of his 50–H examination, held in October of 1998, Plaintiff stated that nothing continued to bother him as a result of his physical injuries.

Plaintiff estimated that there were six lunch aides, who typically patrol the cafe-

---

1. Plaintiff testified at his 50–H hearing that the distance from the lunch table to the vending machine was twenty feet. At his deposi-

tion held in connection with this matter, he estimated that distance as between ten and fifteen feet.

teria, on duty on the day of the incident. Defendants' responses to interrogatories indicate that there were eleven lunch aides on duty on the day of the incident. Plaintiff states that he does not believe that an aide witnessed the incident because, according to Plaintiff, if she had witnessed the incident, she would have come over to the table. Plaintiff claims to have approached a lunch monitor after the incident and to have asked to leave the cafeteria. The monitor is alleged to have told Plaintiff to return to his seat.

Plaintiff testified that he did not know Hogan and had never seen him prior to the attack. Plaintiff testified that no one had tried to take his lunch change prior to the day of the attack by Hogan and that grabbing change from students' lunch trays was not the type of incident that usually took place in the cafeteria.

## B. Hogan's Disciplinary Record

As a result of Defendants' investigation of the incident, Hogan was disciplined with a one day in-school, and one day out-of-school, suspensions. Defendants have supplied Plaintiff and the court with details of Hogan's disciplinary record during the time when he was a middle school student. The incident involving Plaintiff occurred at the beginning of both Hogan and Plaintiff's eighth grade year. The record reflects that Hogan was disciplined on six separate occasions prior to the incident involving Plaintiff. Hogan was suspended once while in sixth grade for fighting. He was disciplined on five occasions in the seventh grade—twice for fighting while in class. The remaining three disciplinary actions were detention referrals for insubordination in class.

The suspension following the incident was the first action taken against Hogan while an eighth grade student.[2] There is no evidence of Hogan ever attempting to steal from another student. Nor is there any evidence of any contact between Hogan and Plaintiff prior to the incident forming the basis for this action. There is also no evidence of any ongoing problem with violence in the middle school cafeteria.

## C. Defendants Are Entitled to Summary Judgment

The facts of the incident, as recited by Plaintiff, make clear that Defendants are entitled to summary judgment. Despite Hogan's disciplinary record, the sixth and seventh grade incidents were insufficient to put Defendants on notice that Hogan would try to steal Plaintiff's lunch money and return, within seconds, to attack Plaintiff in the lunch room. To be sure, Hogan was no model student. Prevention of the attack on Plaintiff, however, would have been possible only if Hogan were either permanently removed from the school or personally escorted by an aide every moment of the school day. There was no evidence presented putting Defendants on notice that Hogan posed such a danger to his fellow students as to require that level of supervision. The lack of a specific threat defeats any claim that Defendants breached a duty to Plaintiff. *Accord Taylor v. Dunkirk City Sch. Dist.*, 785 N.Y.S.2d 623 (4th Dep't 2004) (fellow student's prior disruptive behavior toward teacher and verbally aggressive behavior toward plaintiff insufficient to present question of fact regarding breach of duty to supervise).

---

2. Plaintiff has submitted evidence of Hogan's disciplinary record following the incident. Because that information has no bearing on the issue of notice, the court will not detail those incidents here.

Nor can Plaintiff cannot prevail on the issue of proximate cause. The incident forming the basis for this complaint took place in a crowded cafeteria during a time period of no more than thirty seconds. The sudden and unprovoked nature of the attack makes it impossible to establish proximate cause between any lack of supervision and the attack. *Accord Nossoughi*, 731 N.Y.S.2d at 79 (no issue of fact as to proximate cause in case involving incident "taking less than one minute"); *Convey v. City of Rye Sch. Dist.*, 271 A.D.2d 154, 710 N.Y.S.2d 641, 646 (2d Dep't 2000) (no issue of fact as to proximate cause in case involving incident that lasted "less than one minute").

There is also no question of fact regarding the adequacy of the school's efforts to intervene after Hogan choked Plaintiff. The fact that no school official witnessed the incident and the short period of time that the incident lasted made it impossible to have stopped the incident any earlier. This defeats the claim that there was a failure to properly respond to the incident in the cafeteria. Cases relied upon by Plaintiff are inapposite in that they involved fighting witnessed by supervising adults and/or incidents lasting significantly longer that the thirty second fight that took place between Plaintiff and Hogan. *See Thomas v. Bd. of Educ. of the Kingston City Consol. Sch. Dist.*, 291 A.D.2d 710, 738 N.Y.S.2d 436, 437 (3d Dep't 2002) (question of fact found as to efforts to intervene where attack took place in on school bus and driver was aware of attack that lasted five minutes); *Wojtowicz v. Dexter Terrace Elem. Sch.*, 288 A.D.2d 915, 732 N.Y.S.2d 527, 528 (4th Dep't 2001) (question of fact found as to efforts to intervene where attack took place in presence of teacher who was "presented with a potentially dangerous situation and failed to take 'energetic steps to intervene' in time to prevent one student from injuring another") (citation omitted).

Finally, there is no support for the claim that Plaintiff was denied access to his guidance counselor or that the counselor acted inappropriately. To the contrary, Plaintiff was allowed to leave the class scheduled after his lunch period, telephoned his mother from the counselor's office and was allowed to leave with her prior to dismissal

New York cases make clear that where, as here, there is no evidence of a specific, prior knowledge of the danger resulting in injury that follows a sudden, impulsive act, there can be no liability and defendant is entitled to summary judgment. *E.g.*, *Mirand*, 614 N.Y.S.2d at 375, 637 N.E.2d 263. Plaintiff has raised neither an issue of fact regarding breach of duty nor proximate cause.

## CONCLUSION

Defendants' motion for summary judgment is granted. The Clerk of the Court is directed to terminate the motion and to close the file in this case.

SO ORDERED.