Dennis GUENTHER and Deborah Guenther, Plaintiffs,

v.

MODERN CONTINENTAL COMPANIES, Modern Continental Construction Co. of New York, Inc., Modern Continental Construction Co., Inc., The Hallen Construction Co., Inc., and Stone & Webster, Inc., Defendants.

No. 06–CV–1420 (RER).

United States District Court, E.D. New York.

June 4, 2008.

Nicholas P. Giuliano, William R. Bennett, III, Bennett, Giuliano, McDonnell & Perrone, LLP, New York, NY, for Plaintiffs.

Ronald Betancourt, Betancourt Vanhemmen Greco & Kenyon, Louis J. Schepp, New York, NY, Angelo Joseph Bongiorno, Frank J. Pecorelli, Jr., Ahmuty, Demers & McManus, Albertson, NY, for Defendants.

## OPINION AND ORDER

RAMON E. REYES, JR., United States Magistrate Judge:

Plaintiff Dennis Guenther and his spouse Deborah Guenther (collectively "Guenther") bring this action against defendants Modern Continental Companies, Modern Continental Construction Co. of New York, Inc., Modern Continental Construction Co., Inc. (collectively, "Modern"), the Hallen Construction Co., Inc. ("Hallen") and Stone & Webster, Inc. ("S & W") for violations of New York Labor Law ("NYLL") §§ 200, 240, and 241. (*See generally* Docket Entry 7.) This Court has subject matter jurisdiction over this action based on diversity of citizenship. *See* 28 U.S.C. § 1332(a)(1). The parties have consented to my jurisdiction pursuant to 28 U.S.C. § 636(c)(1). (*See* Docket Entries 52 & 53.) I previously granted S & W's motion for summary judgment on Guenther's NYLL § 200 claim. (*See* Docket Entry 72.) Guenther has thereafter discontinued his actions against Modern and limited his causes of action to only those pursuant to NYLL §§ 240(1) and 241(6). (*See* Docket Entry 83 at 3.)

Guenther moves for summary judgment on his NYLL §§ 240 and 241 claims. (Docket Entry 81.) Hallen and S & W cross-move for summary judgment on these claims as well. (Docket Entries 84 & 88.) For the reasons set forth below, Guenther's motions for summary judgment are denied; Hallen's and S & W's motions are denied under NYLL § 240 and granted under NYLL § 241.

## BACKGROUND

The facts of this case are not in serious dispute and have already been recounted in my previous opinion and order. *See Guenther v. Modern Continental Cos.*, No. 06–CV–1420 (RER), 2007 WL 2230158, at *1–2 (E.D.N.Y. Aug. 1, 2007). On May 22, 2003, Guenther, while under the employment of third-party defendant Spearin, Preston, Burrows, Inc. ("Spearin"), was working on a construction project known as the Eastchester Extension in the Bronx, New York. (Pl.'s Stmt. ¶¶ 4–5; Hallen's Stmt. ¶¶ 1–3; S & W's Stmt. ¶¶ 1–2.)[1] Con Edison was the owner of the construction site, and Iroquois Gas Transmission System, L.P. ("Iroquois") was the project owner. (Pl.'s Stmt. ¶¶ 7–8; Hallen's Stmt. ¶ 2; S & W's Stmt. ¶ 5.) Iroquois hired Hallen to serve as the general contractor of the project and contracted with S & W to perform work on the site. (Pl.'s Stmt. ¶¶ 8–9; S & W's Stmt. ¶¶ 7–8.) Hallen then contracted with Spearin to drive piles into the ground. (Pl.'s Stmt. ¶¶ 11–12.)

Guenther claims that he sustained injuries while in the course of his employment with Spearin. (Pl.'s Stmt. ¶¶ 26–27; S & W's Stmt. ¶ 1; Hallen's Stmt. ¶ 1.) Guen-ther was performing work called "monking," which required him to climb up leads and position a pile so that the operator of the crane could drive the pile. (Pl.'s Stmt. ¶¶ 19, 24; S & W's Stmt. ¶ 1; Hallen's Stmt. ¶¶ 5–6.) The pile-driving operation required the crane operator to use a crane to lift and drive steel "H" piles. (Pl.'s Stmt. ¶ 13.) A set of leads (i.e., ropes) was attached to the crane. (*See id.* ¶ 14.) The leads are fixed to the boom of the crane and may hang to the ground. (*Id.* ¶ 15.) Using one of its cables, the crane pulls a pile upright into the leads. (*Id.* ¶ 18.) Once the pile is vertical within in the leads, the monk climbs up the leads and, using only his strength, positions the top of the pile directly below the pile hammer. (*Id.* ¶ 19.) Once the pile is beneath the hammer, the crane operator is signaled to gently lower the hammer on to the top of the pile. (*Id.* ¶ 20.) After the hammer is set on top of the pile, the monk climbs down the leads. (*Id.* ¶ 22; Hallen Stmt. ¶ 6.) When the monk is clear of the pile driver, the crane operator drives the pile into the ground. (Pl.'s Stmt. ¶ 23.)

Lawrence Anderson ("Anderson") was the crane operator employed by Spearin when Gunether was injured. (S & W's Stmt. ¶ 4; *see also* Docket Entry 96, Ex. C at 13–16.) Anderson testified that, prior to the accident, he had lifted a pile to the top of the crane's leads in preparation of driving the pile. (Docket Entry 96, Ex. C at 26–27.) Anderson further testified that, in the process of positioning the pile, "I'm traveling with the machine and apparently my foot accidentally knocked the brake off

---

**1.** Because Guenther, S & W and Hallen each moved for summary judgment, the parties somewhat repetitiously filed three independent sets of Local Rule 56.1 statements of fact and corresponding responses. "Pl.'s Stmt" refers collectively to plaintiff Guenther's Local Rule 56.1 statement (Docket Entry 81), Hallen's response (Docket Entry 85) and S & W's response (Docket Entry 87.) "Hallen's Stmt." refers collectively to defendant Hallen's Local Rule 56.1 statement (Docket Entry 88, Attach. 1) and Guenther's response (Docket Entry 90). "S & W's Stmt." refers collectively to S & W's Local Rule 56.1 statement (Docket Entry 84, Attach. 1) and Guenther's response (Docket Entry 91).

and unlatched the brake and the hammer came down a few feet and I grabbed it with my foot as it came down." (*Id.* at 27; *see also* Pl.'s Stmt. ¶ 25; Hallen's Stmt. ¶¶ 8–9; S & W's Stmt. ¶ 4.) Guenther testified that he had just positioned the pile under the hammer and was starting to exit the leads when the hammer fell. (Docket Entry 81, Attach. 1 at 3; Docket Entry 84, Ex. G at 134.) Guenther was standing inside the leads when a portion of the hammer fell approximately ten feet and struck him. (Pl.'s Stmt. ¶¶ 25–26; S & W's Stmt. ¶ 3.) At the time of the incident, Guenther was wearing a safety harness and a lifeline provided by his employer. (Hallen's Stmt. ¶ 11.) These devices prevented Guenther from falling to the ground. (*Id.* ¶ 12.)

Guenther, Hallen and S & W each move for summary judgment on Guenther's claims under NYLL §§ 240 and 241(6). (*See generally* Docket Entries 83, 84 and 85.)

## ANALYSIS

### I. *Standard*

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Am. Int'l Group, Inc. v. London Am. Int'l Corp.,* 664 F.2d 348, 351 (2d Cir.1981). In addition, the court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If, however, the opposing party fails to make a showing of an essential element of its case for which it bears the burden of proof, summary judg-

ment will be granted. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548; *Smith v. Half Hollow Hills Cent. Sch. Dist.,* 349 F.Supp.2d 521, 524 (E.D.N.Y.2004).

To overcome a motion for summary judgment, the opposing party must show that there is an issue of material fact in dispute. That is, the disputed fact must be one which "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 242, 106 S.Ct. 2505. If the opposing party does not set forth specific facts showing that there is a genuine issue for trial, summary judgment is appropriate. FED.R.CIV.P. 56(c).

In interpreting the New York statutes at issue in this case, the Court is bound by the construction set forth by the New York Court of Appeals. *See Auerbach v. Rettaliata,* 765 F.2d 350, 352 (2d Cir.1985) (citing *Schad v. Borough of Mount Ephraim,* 452 U.S. 61, 65, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981)).

### II. *NYLL § 240(1)*

■ Guenther contends that Hallen and S & W are liable for his injuries because they failed to provide a safety device as set forth in NYLL § 240(1) that would have adequately protected Guenther from the pile driver's falling hammer. Section 240(1), which is sometimes referred to as the "scaffolding law," provides in pertinent part:

> All contractors and owners and their agents ... in the erection, demolition, repairing, altering ... of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.

NYLL § 240(1). In order to prevail on a Section 240(1) claim, an injured plaintiff must prove that: (1) a violation of the statute occurred; and (2) the violation was the proximate cause of the plaintiff's injury. *See Wojcik v. 42nd St. Dev. Project,* 386 F.Supp.2d 442, 450 (S.D.N.Y.2005) (citing *Blake v. Neighborhood Hous. Servs. of N.Y. City, Inc.,* 1 N.Y.3d 280, 284–85, 771 N.Y.S.2d 484, 803 N.E.2d 757 (N.Y.2003)) (other citations omitted); *Shannon v. Lake Grove Centers, Inc.,* 118 F.Supp.2d 343, 347 (E.D.N.Y.2000) (citing *Felker v. Corning, Inc.,* 90 N.Y.2d 219, 221, 660 N.Y.S.2d 349, 682 N.E.2d 950 (N.Y.1997)) (other citations omitted). Once a plaintiff has proved both elements, than the defendant is subject to "absolute liability." *Wojcik,* 386 F.Supp.2d at 450–51 (citing *Koenig v. Patrick Const. Corp.,* 298 N.Y. 313, 316–17, 83 N.E.2d 133 (N.Y.1948)). "Absolute liability" in the context of a Section 240(1) claim does not necessarily mean strict liability, but rather that: (1) a plaintiff's recovery will not be reduced due to another party's comparative negligence; and (2) the statute imposes a nondelegable duty. *Id.* at 451 n. 8 (citations omitted); *see also Blake,* 1 N.Y.3d at 287–88, 771 N.Y.S.2d 484, 803 N.E.2d 757.

All parties move for summary judgment on Guenther's Section 240(1) claim. Guenther contends that defendants violated the statute as a matter of law because he should have been given, stays, blocks, braces, ropes or other devices such as larger leads or an "automonk"[2] to protect him from the hammer. In response, Hallen and S & W argue that: (1) Guenther was provided with a harness and safety line, which comprised adequate safety devices; (2) Hallen and S & W's alleged failing to provide longer leads, an automatic monk or other devices specified by Guenther do not constitute a violation of Section 240(1); (3) the accident was an ordinary danger associated with pile driving; and (4) Anderson's releasing of the brake was the proximate cause of Guenther's injuries.[3]

### A. Statutory Violation of NYLL § 240(1)

■ It is well-settled that the legislative intent of Section 240 was to provide "exceptional protection for workers against the 'special hazards' that arise when the work site either is itself elevated or is positioned below the level where materials or load are hoisted and secured." *Rocovich v. Consolidated Edison Co.,* 78 N.Y.2d 509, 514, 577 N.Y.S.2d 219, 583 N.E.2d 932 (1991). The statute's antecedent dates back over 120 years ago and was promulgated in response to widespread accounts of injuries and deaths in the construction trade caused by defective scaffoldings. *Blake,* 1 N.Y.3d at 284–85, 771 N.Y.S.2d 484, 803 N.E.2d 757. Although the statute is very broadly written, in more recent years the New York Court of Appeals has refined its scope of liability. *See, e.g., Narducci v. Manhasset Bay Assoc.,* 96

---

**2.** Despite its name, Guenther claims that an "automonk" is simply a metal device attached to leads or ropes and has no moving parts. (*See* Docket Entry 81, Attach. 1 at 4; *id.,* Exs. G & H.) Guenther asserts that the purpose of an automonk is to allow a worker to position a pile without the risk of being located below the pile driver's hammer.

**3.** S & W also argues that a safety inspector regularly made audits of the work site and that S & W did not have a duty to oversee the site. Both arguments are inapposite. Whether the work site was regularly inspected has no bearing on whether defendants violated Section 240(1) by failing to provide sufficient safety devices. Furthermore, S & W's second argument has already been denied as a basis for summary judgment. (*See* Docket Entry 72 at 11 (holding that "that there is a genuine issue of material fact with respect to whether S & W exercised the necessary control over the site to be an agent of Iroquois.").)

N.Y.2d 259, 267, 727 N.Y.S.2d 37, 750 N.E.2d 1085 (2001); *Ross v. Curtis–Palmer Hydro–Electric Co.,* 81 N.Y.2d 494, 501, 601 N.Y.S.2d 49, 618 N.E.2d 82 (N.Y.1993); *Rocovich,* 78 N.Y.2d 509, 577 N.Y.S.2d 219, 583 N.E.2d 932. Specifically, the Court of Appeals has explained that the statute "is to be construed as liberally as may be for the accomplishment of the purpose for which it was framed ..., however, this principle operates to impose absolute liability only *after* a violation of the statute has been established." *Narducci,* 96 N.Y.2d at 267, 727 N.Y.S.2d 37, 750 N.E.2d 1085 (citations and internal quotation marks omitted, italics in original). In other words, the threshold question in a Section 240(1) claim is whether the plaintiff has established a prima facie violation of the statute.

■ In order to constitute a prima facie violation of Section 240(1), Guenther's injuries must fall within the scope of "special hazards" contemplated by the statute. "Not every worker who falls at a construction site, and not every object that falls on a worker, gives rise to the extraordinary protections of Labor Law § 240(1). Rather, liability is contingent upon the existence of a hazard contemplated in section 240(1) and the failure to use, or the inadequacy of, a safety device of the kind enumerated therein." *Narducci,* 96 N.Y.2d at 267, 727 N.Y.S.2d 37, 750 N.E.2d 1085. In other words, and as New York courts have often reiterated, Section 240(1) "does not cover the type of ordinary and usual peril to which a worker is commonly exposed at a construction site." *Buckley v. Columbia Grammar & Preparatory,* 44 A.D.3d 263, 267, 841 N.Y.S.2d 249 (N.Y.App.Div. 1st Dept.2007) (citing *Misseritti v. Mark IV Const. Co., Inc.,* 86 N.Y.2d 487, 489, 634 N.Y.S.2d 35, 657 N.E.2d 1318 (N.Y.1995); *Rocovich,* 78 N.Y.2d at 514, 577 N.Y.S.2d 219, 583 N.E.2d 932; *Gonzalez v. Turner Constr. Co.,* 21 A.D.3d 832 (N.Y.App.Div. 1st Dept.2005)).

■ In examining the scope of protection afforded by Section 240(1), the New York Court of Appeals has noted that a number of the devices listed in the statute—such as hoists, blocks, braces, irons and stays—are used primarily for the purpose of lifting or securing loads and materials. *Rocovich,* 78 N.Y.2d at 514, 577 N.Y.S.2d 219, 583 N.E.2d 932 (citations omitted). The Court of Appeals further explained that each of these devices:

> entail a significant risk inherent in the particular task because of the relative elevation at which the task must be performed or at which materials or loads must be positioned or secured. The contemplated hazards are those related to the effects of gravity where protective devices are called for either because of a difference between the elevation level of the required work and a lower level or a *difference between the elevation level where the worker is positioned and the higher level of the materials or load being hoisted or secured.* It is because of the special hazards in having to work in these circumstances, we believe, that the Legislature has seen fit to give the worker the exceptional protection that section 240(1) provides.

*Id.* (citations omitted, emphasis added). The New York Court of Appeals has further explained that:

> The "special hazards" to which we referred in *Rocovich,* [78 N.Y.2d 509], 577 N.Y.S.2d 219, 583 N.E.2d 932, however, do not encompass *any and all* perils that may be connected in some tangential way with the effects of gravity. Rather, the "special hazards" referred to are limited to such specific gravity-related accidents as falling from a height or being struck by a falling object that was improperly hoisted or inadequately secured....

*Ross,* 81 N.Y.2d at 501, 601 N.Y.S.2d 49, 618 N.E.2d 82 (citations omitted, emphasis in original). Therefore, to constitute a prima facie Section 240(1) claim, Guenther must sufficiently allege that his injuries, as well as the proposed safety devices that would have prevented his injuries, relate to the "special hazards" of a falling object that was improperly hoisted or inadequately secured.

My research has revealed that neither the New York Court of Appeals nor any New York appellate or trial court has ruled whether the positioning of a pile and a pile driver's hammer constitutes the hoisting or securing of materials or loads. However, based on a reading of the factual record of events leading to Guenther's injuries, it is clear that this scenario constitutes the type of "special hazard" contemplated by Section 240(1). In pertinent part, the crane operator stated that he had hoisted the pile driver's hammer to the top of the leads; S & W and Hallen admit that Guenther was thereafter in the process of securing the pile and hammer when the hammer fell ten feet and struck him. Guenther's alleged injuries thus directly relate to the unique type of gravity-related danger caused "by a falling object that was improperly hoisted or inadequately secured" contemplated by Section 240(1). *See Ross,* 81 N.Y.2d at 501, 601 N.Y.S.2d 49, 618 N.E.2d 82 (citations omitted). Guenther's alleged injuries also directly relate to whether S & W and Hallen provided him with proper protection related to the work to which he was so employed. *See* NYLL § 240(1) (requiring the use of safety devices "as to give proper protection to a person so employed"). Despite S & W and Hallen's arguments to the contrary, Guenther's injuries were therefore not caused by merely the "usual and ordinary dangers of a construction site" that typically warrants granting a motion for summary judgment. *See Rodriguez v. Margaret Tietz Center for Nursing Care,* *Inc.,* 84 N.Y.2d 841, 843, 616 N.Y.S.2d 900, 640 N.E.2d 1134 (N.Y.1994).

None of the cases cited by S & W and Hallen otherwise persuade me to dismiss the Section 240(1) claim due to Guenther's failure to allege a prima facie violation of the statute. First, the instant case is distinguishable from the line of New York cases where summary judgment was appropriate because the falling material itself did not require securing for the purpose of the undertaking. *See, e.g., Narducci,* 96 N.Y.2d 259, 727 N.Y.S.2d 37, 750 N.E.2d 1085 (affirming summary judgment where falling glass injured plaintiff because material was not being hoisted nor was it part of a load that required securing for purposes of the work being undertaken). Here, Guenther sufficiently alleges that the falling hammer *itself* required securing for the specific task of driving piles that Guenther was proceeding to undertake. Second, this case may be distinguished from the line of New York cases where a plaintiff's injuries are not gravity-related. *See, e.g., Smith v. N.Y. State Elec. & Gas Corp.,* 82 N.Y.2d 781, 604 N.Y.S.2d 540, 624 N.E.2d 677 (N.Y.1993) (holding that summary judgment was appropriate where plaintiff was injured by dragging tension ball propelled by a crane because injury was not gravity-related); *Thompson v. Ludovico,* 246 A.D.2d 642, 668 N.Y.S.2d 238 (N.Y.App.Div.2d Dept.1998) (affirming summary judgment where plaintiff was injured when working on truck crane's boom that slipped because injury was not an elevation-related risk); *Zdunczyk v. Ginther,* 15 A.D.3d 574, 792 N.Y.S.2d 496 (N.Y.App.Div.2d Dept.2005) (affirming summary judgment where plaintiff was injured by bucket of construction debris lowered by coworker where "the plaintiff failed to raise a triable issue of fact that his injury arose from an elevation-related risk within the

contemplation of the statute"). As already noted, S & W and Hallen have failed to dispute the genuine issues of material fact that Guenther's injuries were directly related to the fact that the hammer was elevated. Finally, this case may also be distinguished from the line of New York cases where summary judgment was appropriate because the material fell from a de minimis height. *See, e.g. Rodriguez,* 84 N.Y.2d 841, 616 N.Y.S.2d 900, 640 N.E.2d 1134 (holding that summary judgment against plaintiff was appropriate where plaintiff was injured when placing 120–pound beam onto ground from an elevation of only seven inches above his head). Here, S & W and Hallen admit that the hammer fell approximately ten feet, which is more than a de minimis height as defined by the New York Court of Appeals.

In the main, S & W and Hallen have failed to present a cogent reason why Guenther's injuries do not constitute the type of injury that the New York legislature envisioned under Section 240(1). Based on my reading of New York case law, it seems clear that a pile driver's hammer that falls approximately ten feet on a worker engaged in positioning piles is precisely a falling object that was improperly hoisted or inadequately secured. *See Rocovich,* 78 N.Y.2d at 514, 577 N.Y.S.2d 219, 583 N.E.2d 932. Therefore, I find that Guenther has sufficiently raised a prima facie violation of Section 240(1) because his injuries were allegedly caused by being positioned below where an object was improperly hoisted and secured.

### B. *Proximate Cause*

 Having determined that Guenther has established a prima facie violation of Section 240(1), the next issue is whether the lack of adequate safety devices was the proximate cause of Guenther's injuries. As the New York Court of Appeals has emphasized, proximate cause in the context of a Section 240(1) claim requires a showing that the object fell *"because* of the absence or inadequacy of a safety device of the kind enumerated in the statute." *Narducci,* 96 N.Y.2d at 268, 727 N.Y.S.2d 37, 750 N.E.2d 1085 (emphasis in original). Guenther contends that he has established proximate cause as a matter of law and that summary judgment should therefore be granted in his favor. In turn, S & W and Hallen argue it is undisputed that Guenther was provided with safety devices that directly relate to the dangers of working on an elevated work site and below where materials were being hoisted and secured.

Turning specifically to S & W and Hallen's arguments, they contend that Guenther admits that he was given a safety line that prevented him from falling from his elevated work site at the time of his injury. Furthermore, S & W and Hallen note that the uncontroverted evidence shows that the hammer, piles and other elevated materials in use during Guenther's work were all secured through the use of ropes, hoists, stays and other devices enumerated by Section 240(1). Finally, S & W and Hallen contend that Guenther has not presented a genuine issue of material fact that the crane's brake malfunctioned. Indeed, Guenther admits that the reason the hammer descended was because Anderson accidentally disengaged the brake pedal. S & W and Hallen therefore argue that Guenther was provided with properly functioning safety devices.

 It is worth repeating, however, that Section 240(1) requires that the enumerated safety devices be provided *"as to give proper protection* to a person so employed." NYLL § 240(1) (emphasis added); *see also Ross,* 81 N.Y.2d at 501, 601 N.Y.S.2d 49, 618 N.E.2d 82 (holding that "Labor Law § 240(1) was designed to prevent those types of accidents in which the ... protective device *proved inadequate to*

*shield* the injured worker from harm directly flowing from the application of the force of gravity to an object or person") (emphasis added). Furthermore, because contributory negligence is not a valid defense under Section 240(1), summary judgment is only appropriate where it is shown that an intervening worker's actions were the "sole" proximate cause. *See Rodriguez v. Biltoria Realty, LLC*, 250 F.Supp.2d 122, 127 (E.D.N.Y.2003) (citing New York case law); *see also Robinson v. East Med. Ctr., LP*, 6 N.Y.3d 550, 554, 814 N.Y.S.2d 589, 847 N.E.2d 1162 (N.Y.2006) (affirming summary judgment where eight-foot ladders were available and adequate to prevent plaintiff's injuries because the sole proximate cause of plaintiff's injuries was his misuse of a six-foot ladder); *Montgomery v. Fed. Express Corp.*, 4 N.Y.3d 805, 806, 795 N.Y.S.2d 490, 828 N.E.2d 592 (N.Y.2005) (affirming summary judgment where plaintiff's use of inverted bucket to gain access to roof rather than a readily available ladder was the sole cause of injury). In resolving these issues, "[i]t is well settled that where conflicting evidence is presented that would support various inferences, the issue of proximate cause is properly a question of fact for the jury to decide."[4] *Demshick v. Community Housing Mgmt. Corp.*, 34 A.D.3d 518, 521, 824 N.Y.S.2d 166 (N.Y.App.Div.2d Dept.2006) (citing *Alexander v. Eldred*, 63 N.Y.2d 460, 468, 483 N.Y.S.2d 168, 472 N.E.2d 996 (N.Y.1984)).

I acknowledge that S & W and Hallen have presented substantial evidence that Anderson's misuse of the pile driver crane's brake was the proximate cause of Guenther's injuries. Guenther has therefore not established that, as a matter of law, S & W and Hallen's failure to provide safety devices was the proximate cause of his injuries. Guenther's motion for summary judgment under Section 240(1) is thus denied.

As for S & W and Hallen's motions, the first question is whether they have established as a matter of law that Anderson's accidental release of the brake was the *sole* proximate cause of Guenther's injuries. "Where the acts of a third party intervene between the defendant's conduct and the plaintiff's injury, the causal connection is not automatically severed. In such a case, liability turns upon whether the intervening act is a normal or foreseeable consequence of the situation created by the defendant's negligence." *Derdiarian v. Felix Contracting Corp.*, 51 N.Y.2d 308, 315, 434 N.Y.S.2d 166, 414 N.E.2d 666 (1980) (citations omitted). In assessing the foreseeability of Anderson's accidental release of the brake, this act may relieve S & W and Hallen of liability "if it is of such an extraordinary nature or so attenuated from the defendants' conduct that responsibility for the injury should not reasonably be attributed to them." *Gordon v. Eastern Ry. Supply, Inc.*, 82 N.Y.2d 555, 562, 606 N.Y.S.2d 127, 626 N.E.2d 912 (1993).

Anderson testified that the unusual layout of the construction site required him to drive the crane into the proper position. (Docket Entry 96, Ex. C at 31.) Anderson further testified that "this was an unusual situation so we had to walk the machine and I think maybe when you get out of rhythm, sometimes I think I maybe I might have moved my foot the wrong way for an instant and it knocked the brake off." (*Id.*) Given the hazards intendant upon requiring an operator to position the crane into place while simultaneously keeping the brake pedal depressed with his foot, the risk that Anderson would

---

**4.** S & W filed a demand for a jury trial on August 8, 2006. (*See* Docket Entry 22.) Without deciding this issue and simply for the sake of the foregoing motions, I assume that any trial in this case would be in front of a jury.

accidentally release the hammer during this process was not extraordinary or attenuated as a matter of law. Although it is entirely possible that a reasonable jury may conclude that Anderson's actions *were* unforeseeable, it is nonetheless the province of a jury to make such a determination. *See Derdiarian,* 51 N.Y.2d at 315, 434 N.Y.S.2d 166, 414 N.E.2d 666 (holding that "[b]ecause questions concerning what is foreseeable and what is normal may be the subject of varying inferences ...", these issues generally are for the fact finder to resolve"). Therefore, I find that a jury could reasonably conclude that Guenther's injuries were a foreseeable consequence of relying upon the crane operator's use of the brake to protect Guenther from an accidentally released hammer.

I also find that there are genuine issues of material fact that *additional* safety devices would have prevented Guenther's injuries. Specifically, S & W and Hallen have failed to refute Guenther's argument that a jury could conclude that a chock, longer leads or an automonk would have prevented Guenther's injuries. A reasonable jury could conclude that the proximate cause of Guenther's injuries were: (1) the failure to chock the hammer, as opposed to merely relying on the crane's pedal brake, while Anderson moved the crane into position and while Guenther was working in the leads; (2) the failure to provide longer leads that would have allowed Guenther to position the pile and hammer without being located directly underneath the hammer; or (3) the failure to provide an automonk that would have similarly allowed Guenther to position the pile and hammer without being directly underneath the hammer.[5] I note that each of these safety devices constitute the type of devices enumerated in Section 240(1).[6] I also note that Guenther has raised material issues of fact that these devices are directly related to the danger inherent in working below an elevated hammer and would have conceivably prevented Guenther's injuries. As with the issue of foreseeability, a jury *may* likely conclude that a lifeline, ropes and the crane's brake constituted adequate safety devices to protect Guenther from gravity-related hazards. However, the adequacy of these devices and the necessity of additional devices is an issue of fact to be tried before a jury due to the conflicting inferences to be drawn from the evidence. *See Demshick,* 34 A.D.3d at 521, 824 N.Y.S.2d 166. Because I find that there is a view of the evidence that might lead a reasonable jury to conclude that the absence of additional safety devices was a proximate cause of Guenther's injuries, S & W and Hallen's motions are denied.[7]

---

5. I agree with Hallen that evidence raised by Guenther that an automonk was used at the work site after Guenther's accident constitutes a subsequent remedial measure. (*See* Docket Entry 85, Attach. 1 at 13.) As such, this evidence is not admissible. *See* FED. R.EVID. 407. Even excluding such evidence, this does not alter my opinion that a reasonable jury could find that the failure to provide an automonk was the proximate cause of Guenther's injuries.

6. An "automonk" is not enumerated in Section 240(1). However, an automonk is a simple device made from ropes and a brace, which *are* described in the statute. As Guenther claims, an automonk is also a safety device that is designed specifically to prevent the gravity-related danger of a pile driver's falling hammer. Therefore, I conclude that an automonk is one of the "other devices" that the New York legislature had in mind when contemplating the special hazards of gravity-related work. *See* NYLL § 240(1).

7. I note that New York appellate courts in the Third Department have taken a more narrow view and granted summary judgment where a plaintiff was provided with adequate safety devices and the undisputed evidence shows that the devices worked properly in relation to gravity-related hazards. *See, e.g., Foote v. Lyonsdale Energy Ltd. P'ship,* 23 A.D.3d 924,

III. *NYLL § 241(6)*

To prevail on his NYLL § 241(6) claim, Guenther must show that S & W and Hallen violated a specific, concrete regulation contained in the New York Industrial Code. *See Ross*, 81 N.Y.2d at 505, 601 N.Y.S.2d 49, 618 N.E.2d 82. Guenther's 241(6) claim is based upon an alleged violation of NEW YORK INDUSTRIAL CODE RULE 23–9.10(f), *available at* http://www.labor.state.ny.us/workerprotection/safetyhealth/sh23.shtm# 23.9.10. Rule 23–9.10(f) provides that "[w]hen any pile driver is not in use the hammer shall be chocked or blocked in the leads or lowered to the ground or grade level." *Id.* Guenther argues that the pile driver's hammer should have been chocked, blocked or lowered to the ground while the hammer was moved into position to drive piles. In response, Hallen and S & W argue that Rule 23–9.10(f) was not violated because the hammer was still in use at the time of Guenther's injuries. The question that arises, and has been argued by all parties, is whether the pile driver was "not in use" while Guenther monked the piles.

Under New York law, "[w]hen interpreting language in a statute or code, a court should attempt to effectuate the intent of the legislative body and because the statutory text is the clearest indicator of legislative intent, the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof." *Hakimi v. Cantwell Landscaping & Design, Inc.*, 50 A.D.3d 848, 855 N.Y.S.2d 273, 275–76 (N.Y.App.Div.2d Dept.2008) (citations and internal quotation marks omitted). Although the term "not in use" as utilized by Rule 23–9.10(f) may appear to be facially ambiguous, other portions of the New York Industrial Code lend assistance in demonstrating the legislative intent. Specifically, Rule 23–1.4(a) of the Industrial Code provides that terms "shall mean that such materials, devices, structures, methods and procedures shall be of such kind and quality as a reasonable and prudent man experienced in construction, demolition and excavation operations would require in order to provide safe working conditions for himself in the performance of such work." NEW YORK INDUSTRIAL CODE RULE 23–1.4(a), *available at* http://www.labor.state.ny.us/workerprotection/safetyhealth/ sh23.shtm# 23.1.4. In applying a reasonable person in the industry standard, it seems clear that the term "not in use" as used in Rule 23–9.10 means when pile driving operations have ceased for an extended period of time such as during a break or at the end of the day. As Guen-

---

927, 805 N.Y.S.2d 163 (N.Y.App.Div.3d Dept. 2005) (holding that Section 240(1) is inapplicable where plaintiff was injured by collapsing wood chip stacker where elevated catwalk worked properly to prevent plaintiff's fall and injuries were caused by the intervening circumstance of the entire structure's collapse); *Corey v. Gorick Const. Co. Inc.*, 271 A.D.2d 911, 706 N.Y.S.2d 512 (N.Y.App.Div.3d Dept. 2000) (affirming summary judgment where plaintiff was injured by beam dropped to the ground because hoisting and clamping equipment did not malfunction and served their core objective). Hallen and S & W also point to *Isabell v. U.W. Marx, Inc.*, 299 A.D.2d 701, 751 N.Y.S.2d 324 (N.Y.App.Div.3d Dept. 2002), as justifying summary judgement.

However, in *Isabell*, the Third Department affirmed summary judgment where a plaintiff was injured by an elevated beam that was *intentionally* flipped by a crane operator. Furthermore, I read these cases as consistent with the above analysis in that, in each instance, the court found that there was *no* disputed issue of fact that the lack of a safety device was the proximate cause of the plaintiff's injuries. In other words, the courts found that the defendants had established the sufficiency of provided safety devices as a matter of law. As noted above, given the facts presented in the instant case, I find that a reasonable jury could conclude that additional safety devices would have prevented Guenther's injuries.

ther, Hallen and S & W have each demonstrated, pile driving is a multiple-stage process. The pile must be raised and positioned, the hammer is then released and thereafter the process must be repeated for each and every pile to be driven. Therefore, it is reasonable to conclude that "not in use" describes the entire driving process as opposed to when the hammer is momentarily lifted to permit the monking of piles.

Such an interpretation is consistent with, and is supported by, other portions of the New York Industrial Code. Subsection (g) of Rule 23–9.10, which directly follows the subsection at issue herein, is entitled *"Temporary interruption"* and states that "[t]he operator of every pile driver shall remain at the controls when the driving is interrupted until the hammer has been chocked or blocked in the leads, or has been lowered and is resting on a driven pile or on the ground." NEW YORK INDUSTRIAL CODE RULE 23–9.10(g).[8] In reading subsections (f) and (g) together, it is clear that "not in use" has a distinct meaning from a "temporary interruption." Given the evidence presented, S & W and Hallen have established as a matter of law that, at the time that Guenther was injured, the pile driver was still in use. I therefore grant S & W and Hallen's motions for summary judgment because there are no genuine issues of material fact showing a violation of Rule 23–9.10(f) and NYLL § 241(6). Guenther's motion is accordingly denied.

### CONCLUSION

For the reasons stated above, Guenther's motions for summary judgment un-

der NYLL §§ 240 and 241 are denied; Hallen's and S & W's motion for summary judgment under NYLL § 240 are denied; and Hallen's and S & W's motions for summary judgment motion under NYLL § 241 claim are granted. A decision on Hallen's motion in limine to exclude Thomas J. Taylor and Norman Wesler from testifying at trial will be forthcoming.[9] (*See* Docket Entry 95, Attach. 10.)

---

**8.** Guenther has not alleged a violation of Rule 23–9.10(g). Even if he had, there is no factual dispute that Anderson was present at the controls of the crane during the entirety of the process, including the moment when the hammer was inadvertently released.

**9.** Mr. Taylor and Mr. Wesler's expert reports and testimony played no part in the foregoing order. Even absent their expert testimony and reports, and for the reasons given, I find that there are sufficient issues of fact to warrant Guenther's NYLL § 240 claim to go forward at trial.